UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SPONGETECH DELIVERY SYSTEMS, INC.;<br>RM ENTERPRISES INTERNATIONAL, INC.;<br>STEVEN Y. MOSKOWITZ;<br>MICHAEL E. METTER;<br>GEORGE SPERANZA;<br>JOEL PENSLEY; and<br>JACK HALPERIN,<br><br>Defendants. | Civil Action No.<br>10-CV-2031 |

## DECLARATION OF CHRISTINE E. NEAL

I, Christine E. Neal, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney at the United States Securities and Exchange Commission (the "SEC" or the "Commission"). I am currently a member in good standing of the Illinois Bar. As part of my daily activities, I investigate possible violations of the federal securities laws including, but not limited to, the Securities Act of 1933 and the Securities Exchange Act of 1934.

2. I submit this Declaration in support of the Plaintiff Securities and Exchange Commission Motion for Preliminary Injunction, Asset Freeze, and Other Relief.

3.  On or about September 2, 2009, the SEC began a formal investigation of possible violations of the federal securities laws by Spongetech Delivery Systems, Inc. ("Spongetech"). This investigation is ongoing. I have participated in this investigation and the facts set forth herein are based on my personal knowledge or upon information contained in the files of the Commission.

## PUBLIC STATEMENTS ABOUT CUSTOMERS

4.  During the period from April 2007 through at least August 2008, Spongetech issued press releases announcing actual and anticipated orders received from five customers: SA Trading Company ( "SA Trading"), US Asia Trading Company or United Asia Trading Company ("US Asia"),  Dubai Export Import Company ("Dubai"), Fesco Sales Corp. ("Fesco"), and New Century Media.  According to these press releases, each of these customers was a foreign entity. **[Exhibit A]**

5.  On August 29, 2008, Spongetech filed an annual report on Form 10-KSB for the fiscal year ended May 31, 2008 with the SEC.  In this filing, Spongetech represented that 70.5% of its reported sales for the period were derived from orders received from customers identified as SA Trading, US Asia, and Dubai.  In their capacities as Chief Executive Officer and Chief Financial Officer, respectively, Metter and Moskowitz signed this filing and submitted signed certifications pursuant to the requirements of the Sarbanes-Oxley Act of 2002. **[Exhibit B]**

6.  On October 15, 2008, Spongetech filed a quarterly report on Form 10-Q for the period ended August 31, 2008, with the SEC.  In this filing, Spongetech represented that for the three-month period ended August 31, 2008, 67.6% of its reported sales were derived from three customers: SA Trading, US Asia, and Dubai.  In their capacities as

Chief Executive Officer and Chief Financial Officer, respectively, Metter and Moskowitz signed this filing and submitted signed certifications pursuant to the requirements of the Sarbanes-Oxley Act of 2002. **[Exhibit B]**

7.  On January 14, 2009, Spongetech filed a quarterly report on Form 10-Q for the period ended November 30, 2008, with the SEC.  In this filing, Spongetech represented that for the six months ended November 30, 2008, three customers, SA Trading, Dubai, and New Century Media, accounted for 82.9% of its reported sales.  In their capacities as Chief Executive Officer and Chief Financial Officer, respectively, Metter and Moskowitz signed this filing and submitted signed certifications pursuant to the requirements of the Sarbanes-Oxley Act of 2002.  **[Exhibit B]**

8.  On April 20, 2009, Spongetech filed a quarterly report on Form 10-Q for the period ended February 28, 2009, with the SEC.  In this filing, Spongetech represented that the following entities constituted 99.4% of its sales for the nine-month period ended February 28, 2009: SA Trading, Dubai, US Asia, Fesco, New Century Media, and Walgreens.  In their capacities as Chief Executive Officer and Chief Financial Officer, respectively, Metter and Moskowitz signed this filing and submitted signed certifications pursuant to the requirements of the Sarbanes-Oxley Act of 2002. **[Exhibit B]**

### EFFORTS TO LOCATE CUSTOMERS

9.  On September 4, 2009, the staff of the SEC issued a subpoena to Spongetech seeking, among other things, documents sufficient to identify contact information for Spongetech customers and potential customers including, but not limited to, SA Trading, Dubai, New Century Media, Wal-Mart, Costco, European Markets, Vanity Events, Inc.,

Sears Canada, and CVS for the period October 2, 2002, through the date of the subpoena. [Exhibit C]

10. I reviewed documents provided to the staff by Spongetech in response to the September 4, 2009 subpoena. Certain of these documents show that on September 9, 2009, Spongetech's auditor requested contact information from Spongetech in order to issue audit confirmations of account receivables in connection with the financial statement audit for Spongetech's fiscal year ended May 31, 2009.

 a. I reviewed a two-page document bates-stamped ST078820-78821 reflecting an email thread primarily between Brent Davies, CPA ("Davies") of the audit firm Robison, Hill & Co. ("Robison"), Mark Kranczer ('Kranczer"), and Moskowitz on September 9, 2009. Davies sent an email to Kranczer at 3:33 p.m. with the subject line: A/R confirmations. Davies states, "You will need to put the addresses on the confirmation before getting them signed." Kranczer forwarded this email to Moskowitz at approximately 5:26 p.m. the same day and asked, "How do we go about getting these confirms?" Attached to Kranczer's email are five documents labeled ARconfirm Dubai Export Import.doc; AR confirm Fesco Sales Corp.doc; AR confirm New Century Media.doc; AR confirm SA Trading.doc; and AR confirm US Asia Trading.doc. These documents are bates-stamped ST078822-78827 and are one–page letters dated September 9, 2009 on Spongetech's letterhead. Although the letters reflect the name of each entity as the addressee, they do not reflect mailing addresses. Each letter asks the entity to confirm the balance due to Spongetech as of May 31, 2009, and to mail its reply to Robison. [Exhibit D]

b.      On October 6, 2009, I issued a subpoena to Robison seeking all documents relating to Spongetech. **[Exhibit E]** On October 29, 2009, Davies responded to the October 6, 2009 subpoena on behalf of Robison by providing a number of documents by email. Among the documents that Davies and Robison provided was a three-page document containing what appear to be copies of envelopes addressed to Dubai, Fesco, New Century Media, and US Asia and a post-it note bearing handwriting. **[Exhibit F]**

i.    The envelope addressed to US Asia bears handwriting stating, "return unknown here"

ii.   The envelopes addressed to New Century Media and Dubai have a sticker that reads "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD"

iii.  The envelope addressed to Fesco has a sticker that reads, "Return to Sender Moved or Unknown No forwarding Information Available"

iv.   The post-it note reflects the handwritten notes, "Multi Media Sales Las Vegas
SA Trading Co. Miami, FL
No response"

11. Following the issuance of the September 4, 2009 subpoena, the staff of the SEC requested, through Spongetech's counsel, Martin Siegel, Esq. ("Siegel") of the law firm Brown & Rudnick LLP that Spongetech provide contact information for each of its six largest customers identified in Spongetech's Form 10-Q filed with the SEC on April 20, 2009.

12. In response to the staff's request, by email dated September 25, 2009, Siegel provided the following names, addresses, and telephone numbers:  **[Exhibit G]**

Dustin Sullivan, Buyer
Walgreen Co.
200 Wilmot Road
Deerfield, IL 60015
1-800-925-4733

Carlos Vega
S A Trading
201 South Biscayne Blvd.
Miami, FL 33131
305-913-7538

Helen Sims
New Century Media
140 East Ridgewood Avenue
Paramus, NJ

Even Chin
United Asia Trading
14785 Preston Road
Suite 550
Dallas, TX 75254
972-789-5125

Ahmad Elsayed
Dubai Export Import Company
8 Fanueil Hall Marketplace
3rd Floor
Boston, MA 02109

Jim Rogers
Fesco Corp.
845 Third Avenue
New York, NY 10022

13. On September 28, 2009, Siegel sent an email to the staff containing an additional address and telephone number for New Century Media, 2727 Pellessili Place, City of Industry, CA 90601, 562-695-1000. **[Exhibit H]** Siegel supplemented his response again on September 29, 2009, by email, providing a telephone number for Dubai, 617-973-5122, and Fesco, 646-290-5039. **[Exhibit I]**

14. I searched the Internet and various databases maintained by Lexis-Nexis for registration, incorporation, financial, and contact information relating to each of the six largest customers identified in Spongetech's Form 10-Q for the period ended February 28, 2009. I found no records of SA Trading, Dubai, US Asia, or Fesco at the addresses provided by Siegel.

15. Between September 28, 2009, and September 30, 2009, I contacted landlords and leasing agents for the office buildings located at the addresses for Dubai, Fesco, New Century Media, and US Asia identified by Siegel. A representative of each landlord or leasing agent told me that there were no tenant by that name in its respective office building. The representative for Fanueil Hall Marketplace ("Fanueil Hall"), the address of Dubai, referred me to a local office of Regus Management LLC. ("Regus"), a tenant in Fanueil Hall. Regus is a company that rents, among other things, temporary or "virtual" offices. Soon thereafter, I contacted a receptionist and the acting general manager of Regus's local office at Fanueil Hall. The receptionist told me that Dubai was a tenant and that a person by the name of George Speranza ("Speranza"), not Ahmad Elsayed, was the manager of Dubai. When I sought further information, the receptionist told me that she could not provide any additional information. The acting general manager also told me that she could not give me any account information regarding Dubai and referred me to Regus's corporate office. Through my discussions with the landlords and leasing agents, I learned that the suite number attributed to US Asia was also rented by Regus.

16. On September 28, 2009, I issued subpoenas to New Century Media, United Asia, Dubai, and SA Trading at the addresses identified by Siegel. **[Exhibit J]** The subpoenas

sought documents relating to Spongetech and the testimony of each of the contact persons identified by Siegel. Each of these subpoenas was served via federal express and delivered on September 29, 2009. The September 28, 2009, subpoena to Dubai Export Import Company was later returned as undeliverable. On or about March 17, 2010, FedEx delivered the unopened package to me. The package bore two labels: one handwritten label that stated, in part, "wrong add." and a FedEx Exception/Send Again label indicating that the package was returned because "recipient moved and left no forwarding address" and "incorrect recipient address/incomplete recipient address." **[Exhibit K]** The staff received no response to the subpoenas issued to New Century Media, United Asia, or SA Trading.

17. **WALGREEN** - On September 29, 2009, I issued a voluntary request for information to Walgreen Co. c/o Oren Azar ("Azar"), Director, Corporate and Acquisitions Law, Walgreen Co. **[Exhibit L]**

    a.    On the afternoon of September 28, 2009, I also conducted a voluntary telephone interview with Dustin Sullivan ("Sullivan"), a manager of Walgreen's "As Seen on TV" business and the contact person for Walgreen identified by Siegel. Sullivan told me he first had contact with Spongetech in or about January 2009. He understood that Walgreen had placed orders with Spongetech for approximately 35,000 auto sponge kits. Sullivan also told me that Walgreen had an arrangement with Spongetech, as documented in a term letter dated December 15, in which Walgreen paid only for product that it sold. According to Sullivan, as of September 2009, Walgreen had only sold a portion of the sponges that it

originally ordered.  Sullivan further told me that Walgreen was in the process of returning unsold product to Spongetech.

b.      By emails dated September 29, 2009 and September 30, 2009, Azar provided me with, among other things, correspondence from the files of Sullivan and approximately twenty-five purchase orders relating to Walgreen's order of auto sponge kits from Spongetech during the period from February 13, 2009, through August 6, 2009.  **[Exhibits M and N]**

i.      Included among these documents was a one-page letter dated December 15, 2009, addressed to Sullivan from Moskowitz in his capacity as Chief Operating Officer of Spongetech.  **[Exhibit O]**  I reviewed this document and note that it describes the unit cost, and payment terms for Walgreen's sale of units of Spongetech's Car Wash System.  According to the document, Walgreen was to "Pay on scan for Spongetech® for the 2009, with option to review and potentially change this for future seasons."  I later learned that the term "pay on scan" means that a vendor will pay for product as the product is sold.  During a telephone call on the evening of September 30, 2009, Azar told me that Walgreen operated on a "pay on scan basis" with respect to its orders from Spongetech and that meant Walgreens had no obligation to pay if the product was not sold.  Moskowitz provided the same explanation during his testimony, under oath, before me and other members of the SEC staff on October 8, 2009.  During his testimony, Moskowitz stated,

"Pay on scan is they only pay you if the goods are sold." He

confirmed that Walgreen was the only Spongetech customer that

used "pay on scan." (Moskowitz, Page 249) When asked if "pay

on scan" means that Walgreens is not obligated to pay for the

product until it is sold, Moskowitz answered, "Yes, but if they take

the mark-down money, if they take the mark-down on the money,

then they own the product." (Moskowitz, Page 249)

ii.   I reviewed the purchase orders provided by Walgreen.  Based on

my review and a telephone discussion with Oren Azar on the

evening of September 30, 2009, in which he described various

fields of the purchase order, I noted that the purchase orders reflect

orders totaling approximately $200,000. **Exhibit N**

18. **NEW CENTURY MEDIA** - On September 29, 2009, in response to the

September 28, 2009 subpoena issued to New Century Media at 2727 Pellessili Place, City

of Industry, CA 90601, I received a voicemail message from and I personally spoke to

Domino Wang, Esq. ("Wang"), counsel for New Century Media.  Wang told me that

New Century Media is a replication manufacturer of CDs and DVDs.  She told me that

New Century Media had no business relationship with Spongetech and had no documents

responsive to the subpoena.  On the same date, Wang sent a two-page fax to me

containing a declaration by letter dated September 29, 2009. **[Exhibit P]**  Under penalty

of perjury, Wang stated in relevant part that, "There has never been any relationship,

business or otherwise, between New Century Media and Spongetech Delivery Systems,

10

Inc." Wang also stated, "After search and review, no one at New Century Media has ever heard of or located any records or information about Spongetech Delivery Systems, Inc."

19. I attempted to contact, by telephone, each of the persons identified by Siegel in his emails dated September 25, 28, and 29, 2009. Other than Sullivan of Walgreen, I was unable to speak to any of these people. With the exception of my telephone call to Jim Rogers of Fesco, the receptionist who answered my call told me that the contact person for each entity was not available to take my telephone call. I left messages with the receptionists and voicemail messages for each person. No one responded to my telephone calls or messages.

20. **FESCO** - I learned that the address provided for Fesco was a virtual office operated by Regus. When I attempted to contact Jim Rogers of Fesco on September 28, 2009, a Regus clerk told me that Fesco was a new tenant that would begin occupancy on September 28, 2009. Upon my request, the clerk provided me with an alternate telephone address and telephone number for Fesco, 1455 Bay Ridge, Brooklyn, NY 11219, 347-598-9717. She also told me that the email address associated with the account was nohypenobull@aol.com. I later learned that this address, telephone number, and email address are all associated with Speranza.

21. Using the telephone number provided by the clerk, I attempted to contact Jim Rogers. A person who identified himself as "George Speranza," answered the telephone. Speranza told me that Jim Rogers was not available. Thereafter, I conducted a voluntary telephone interview with Speranza. Speranza told me the following:

     a.     He confirmed that 1455 Bay Ridge, Brooklyn, NY 11219 was his address and not the address of Fesco;

b.     He had worked as a stock promoter starting in 1999;

c.     Although he knew nothing about Fesco, he had done some marketing work for this entity and created a website for it without compensation. He directed me to the website www.fescocorp.com. When I asked him why he created the website, he told me that Fesco was an overseas international contact for Spongetech and that the company had been bombarded with calls from Spongetech shareholders. Speranza directed me to contact Spongetech if I wanted more information about Fesco; and

d.     He neither owned shares of Spongetech stock nor had shares of Spongetech stock ever been offered to him.

22. Also on September 29, 2009, I issued a subpoena to Fesco Corp. c/o Jim Rogers and George Speranza at 1455 Bay Ridge, Brooklyn, NY 11219. **[Exhibit Q]** This subpoena was served via federal express and delivered on September 30, 2009. No one responded to this subpoena.

23. On September 29, 2009, I issued a subpoena to Fesco Corp. c/o Jim Rogers at 845 Third Avenue, New York, NY 10022. **[Exhibit R]** This subpoena was served via federal express and delivered on October 1, 2009. No one responded to this subpoena.

24. In response to the September 4, 2009 subpoena, Spongetech produced invoices and bills of lading for SA Trading, Dubai, New Century Media, US Asia, and Fesco. I reviewed a selection of these documents. I noted that the invoices for each entity contained a billing address located at a dock of a port or an air terminal and the bills of lading listed the same address as the shipping address. **[Exhibit S]** For example, the invoices for New Century Media, US Asia and Fesco bear billing addresses at various

12

docks at the Port of Elizabeth in Elizabeth, NJ.  The invoices for Dubai bear a billing

address of Air Freight Terminal Warehouse #4, Gastonia, NC 28054 and the invoices for

SA Trading bear a billing address of Port of Miami, Dock 37, Miami, FL 84765.

25. On October 7, 2009, I contacted the Port of Miami and inquired about SA

Trading.  I spoke to a clerk who told me that a business permit is required to ship or

receive goods at the Port of Miami.  The clerk conducted an electronic search of the Port

of Miami's current and former permits and could not locate a permit for SA Trading.

## VIRTUAL OFFICES

26. After learning that the addresses provided by Siegel for Fesco, Dubai, and United

Asia were virtual offices hosted by Regus, I issued a subpoena to this entity on

September 30, 2009. **[Exhibit T]**  The subpoena sought documents relating to United

Asia Trading, Fesco Corp, and Dubai Export Import Company.  Regus submitted its

initial response on October 1, 2009.  On that date, Regus provided virtual office

agreements, credit card authorizations, illegible copies of a New York driver's license,

and prepaid gift cards relating to United Asia Trading, Fesco Corp., and Dubai Export

Import Company. **[Exhibit U]**

27. On October 16, 2009, I issued a second subpoena to Regus. **[Exhibit V]** This

subpoena sought documents relating to New Century Media at 140 East Ridgewood

Avenue, Paramus, NJ 07652, S A Trading at 201 S. Biscayne Boulevard, Suite 2800,

Miami, FL. 33131, Spongetech, and George Speranza, as well as, the testimony of the

custodian of records.  On October 23, 2009, in response to the October 16, 2009

subpoena, Regus provided documents to me relating to SA Trading and New Century

Media.  In its cover letter accompanying these documents, Regus informed me that no

other documents exist which would be responsive to the subpoena.  **[Exhibit W]**

28.  I have reviewed the documents provided by Regus on October 1, 2009, and

October 16, 2009, and note the following information:

    a.    United Asia Trading

        i.    The online virtual office agreement dated September 25, 2009, identified the client name as Steven Chin but the client address is 1455 Bay Ridge Avenue, Brooklyn, NY 11219, the client telephone number is 347-598-9717, and email address is nohypenobull@aol.com.  I later learned that this address, telephone number, and email address are associated with Speranza.

        ii.    Speranza's name appears in a box confirming the online order on behalf of United Asia Trading.

        iii.    The credit card payment authorization form, filled out by hand, reflects a credit card in the name of Nohype Media Inc., and the cardholder as George Speranza, with a billing address of 1455 Bay Ridge Avenue 3-F, Brooklyn, NY 11219.  The customer's telephone number is listed as 347-598-9717.  The document also bears the cardholder's signature and indicates that a copy of the invoice should be mailed to nohypenobull@aol.com.

        iv.    The telephone number assigned to the virtual office by Regus is 972-598-9717, the same telephone number identified by Siegel.

v.   The address of the virtual office assigned by Regus is 14785

Preston Road, Suite 550, Dallas, TX 75254, the same address

identified by Siegel.

b.   Dubai Export Import

i.   The online virtual office agreement dated September 25, 2009,

identified the client name as Ahmad Elsayed but the client address

is 1455 Bay Ridge Avenue, Brooklyn, NY 11219, the client

telephone number is 347-598-9717, and email address was

nohypenobull@aol.com.

ii.   Speranza's name appears in a box confirming the online order on

behalf of Dubai Export Import.

iii.   Confirmation of Credit Card Processing states that the expense for

the virtual office should be billed to George Speranza, 1455 Bay

Ridge Avenue, Brooklyn, NY 11219 and the identified telephone

number is (347) 598-9717.

iv.   Regus issued an invoice dated September 25, 2009, to the address

1455 Bay Ridge Avenue, Brooklyn, NY 11219.

v.   The address of the virtual office assigned by Regus is 8 Faneuil

Hall Marketplace, 3rd Floor, Boston, Massachusetts 02109.  This is

the same address identified by Siegel.

c.   SA Trading

i.   The online virtual office agreement dated September 24, 2009,

identified the client name as Carlos Vega but the client address is

1455 Bay Ridge Avenue, Brooklyn, NY 11219, the client

telephone number is 347-598-9717, and email address was

nohypenobull@aol.com.

    ii.   Speranza's name appears in a box confirming the online order on

behalf of SA Trading.

    iii.   The address of the virtual office assigned by Regus is 201 South

Biscayne Boulevard, 28th Floor, Miami, FL. 33131.  This is the

same address provided by Siegel.

  d.    New Century Media

    i.   The online virtual office agreement dated September 25, 2009,

identified the client name as Helen Simms but the client address is

1455 Bay Ridge Avenue, Brooklyn, NY 11219, the client

telephone number is 347-598-9717, and email address is

nohypenobull@aol.com.

    ii.   Speranza's name appears in a box confirming the online order on

behalf of New Century Media as of September 25, 2009.

    iii.   The address of the virtual office assigned by Regus is 140 E.

Ridgewood Avenue, Paramus, NJ 07652, the same address

identified by Siegel.

  e.    Fesco Corp.

    i.   Online order details for a virtual office agreement dated September

25, 2009, identified Jim Rogers as the person placing the order but

the address is 1455 Bay Ridge Avenue, Brooklyn, NY 11219 and

16

telephone number is 347-598-9717.  This document also contains credit card information.  George Speranza is the name listed as the name on the credit card.

ii.    The address of the virtual office assigned by Regus is 845 Third Avenue, New York, New York.  This is the same address provided by Siegel.

29. Upon review of documents provided by Spongetech in response to the September 4, 2009 subpoena, I found several copies of an email sent to symoskowitz@msn.com, an email address that I later learned is associated with Moskowitz, from georgesperanza@aim.com on October 2, 2009 at approximately 7:09 p.m. containing a list of entities with corresponding addresses and telephone numbers. **[Exhibit X]** This email reflects the same addresses for Fesco, Dubai, United Asia, New Century Media, and SA Trading as the virtual offices assigned by Regus described in Paragraph 28.

30. During the course of my review of the documents provided by Spongetech in response to the September 4, 2009 subpoena, I also found an undated one-page document bearing the bates-stamp ST036794 containing a list of entities by name, address, telephone number, and contact name. **[Exhibit Y]** This document reflected the following information:

      a.  Mulit Media Sales
           Thomas Martin
           2300 W. Sahara Avenue, Suite 800
           Las Vegas, NV 89102
           702-664-1190

      b.  SA Trading
           Attn: Carlos Vega
           111 NE 1st Street, 3rd Floor
           Miami, FL 33132

305-328-8550

    c.  New Century Media
        Helen Simms
        991 US Highway 22, Suite 200
        Bridgewater, NJ 08807
        201-322-3520

    d.  United Asia Trading
        Steven Chin
        8939 S. Sepulveda Blvd, Suite 102
        Los Angeles, CA 90045
        310-684-3615

    e.  Dubai Export/Import Co.
        Ahmed Elsayed
        235 Peachtree Street NE Suite 400
        Atlanta, GA 30303
        404-829-2670

    f.  Fesco Corp
        Jim Rogers
        116 West 23rd Street, 5th Floor
        New York, NY 10011
        646-224-5920

31. I searched the Internet for information relating to these entities, persons, addresses, and telephone numbers. I learned that the addresses associated with Mulit Media Sales (also referred to as Multi Media Sales Group), another Spongetech customer, and Dubai, and Fesco were offices maintained by DaVinci Virtual Office Solutions ("DaVinci").

32. On October 21, 2009, I issued a subpoena to DaVinci, a company that provides, among other things, virtual office space. **[Exhibit Z]** The October 21, 2009 subpoena sought documents relating to Multi Media Sales at 2300 W. Sahara Avenue, Suite 800, Las Vegas, NV 89102; Dubai Export Import Company at 235 Peachtree Street, NE, Suite

400, Atlanta, GA 30303; Fesco Corp. at 116 West 23rd Street, 5th Floor, New York, NY 10011; Thomas Martin, Ahmed Elsayed, Jim Rogers, and George Speranza.

33. In response to the October 21, 2009 subpoena, DaVinci provided documents to me on October 22, 2009, including order confirmations and disconnect protocols.

**[Exhibit AA]**

34. I reviewed documents provided to me by DaVinci on October 21, 2009, and noted the following information:

    a.    An Activity History of Multi Media Sales Group reflects communications between DaVinci personnel and Cynthia DeMonte. In what appears to be a transcript of an online communication on September 22, 2009, at 10:59 a.m., a person identified as Cynthia DeMonte inquired about DaVinci's services and indicated that her partner George Speranza would call DaVinci's 800 number. At approximately 11:46 a.m., a caller identified as George Speranza of "Corporate Awareness Group" called DaVinci from telephone number 347-598-9717. DaVinci's notes of communications on September 22, 2009, and September 23, 2009, show that the caller registered six accounts in the name of Multi Media Sales Group, SA Trading, New Century Media, United Asia Trading, Fesco, and Dubai Export Import. One note states, "He is in a rush to get things set-up." Another indicates that credit cards given to DaVinci were declined at least twice during this period.

    b.    Multi Media Sales

        i.    DaVinci sent an order confirmation for Multi Media Sales to Speranza by email on September 23, 2009, at

georgesperanza@aim.com.  In this email, DaVinci confirmed

George Speranza, Multi Media Sales Group, 1455 Bay Ridge

Avenue, Brooklyn, NY 11219, purchased a "local business

presence" at Las Vegas Office Center, 2300 W. Sahara Avenue,

Suite 800, Las Vegas, NV 89102.

    ii.    A document headed "Customer Call Flow" indicates that calls and

messages for Multi Media Sales (spelled as "Mulit") should be

forwarded to Thomas Martin.  Emails, faxes, and voicemails

should be forwarded to nohypenobull@aol.com.  The same

document indicates that the website for Multi Media Sales Group

is www.multimediasales.com.

    iii.    A document headed "Disconnect Protocol" reflects a start date of

September 23, 2009, and a termination date of September 24,

2009, for Multi Media Sales.  According to this document, the

"reason for leaving" is "Fraud."

c.  Dubai Export Import

    i.    DaVinci sent an order confirmation for Dubai Export Import to

Speranza by email on September 23, 2009, at

georgesperanza@aim.com.  In this email, DaVinci confirmed

George Speranza, Dubai Export Import, 1455 Bay Ridge Avenue,

Brooklyn, NY 11219, purchased a "local business presence" at

Downtown Atlanta, 235 Peachtree NE Suite 400, Atlanta, GA

30303.

    ii.    A document headed "Customer Call Flow" indicates that calls and messages for Dubai Export Import should be forwarded to Ahmed Sayid. Emails, faxes, and voicemails should be forwarded to nohypenobull@aol.com. This same document also indicates that the email address for Dubai Export Import is www.dubaiimportexport.com.

    iii.    A document headed "Disconnect Protocol" reflects a start date of September 23, 2009, and a termination date of September 24, 2009, for Dubai Export Import. According to this document, the "reason for leaving" is "Fraud."

d.    Fesco

    i.    DaVinci sent an order confirmation for Fesco to Speranza by email on September 23, 2009, at georgesperanza@aim.com. In this email, DaVinci confirmed George Speranza, Fesco, 1455 Bay Ridge Avenue, Brooklyn, NY 11219, purchased a "local business presence" at 23rd Street Business Center, 116 West 23rd Street, 5th Floor, New York, NY 10011.

    ii.    A document headed "Customer Call Flow" indicates that calls and messages for Dubai Export Import should be forwarded to Jim Rogers. Emails, faxes, and voicemails should be forwarded to nohypenobull@aol.com, an email address that I later learned is associated with Speranza. This same document indicates that the email address for Fesco is www.fescocorp.com.

iii. A document headed "Disconnect Protocol" reflects a start date of September 23, 2009, and a termination date of September 24, 2009 for Fesco. According to this document, the "reason for leaving" is "Fraud."

e. United Asia Trading

i. DaVinci sent an order confirmation for United Asia Trading to Speranza by email on September 23, 2009, at georgesperanza@aim.com. In this email, DaVinci confirmed George Speranza, United Asia Trading, 1455 Bay Ridge Avenue, Brooklyn, NY 11219, purchased a "local business presence" at 23rd Street Business Center, 8939 S. Sepulveda Blvd., Suite 102, Los Angeles, CA 90045.

ii. A document headed "Customer Call Flow" indicates that calls and messages for Dubai Export Import should be forwarded to Steven Chin. Emails, faxes, and voicemails should be forwarded to nohypenobull@aol.com. The same document indicates that the email address for United Asia Trading is www.unitedasiatrading.com.

iii. A document headed "Disconnect Protocol" reflects a start date of September 23, 2009, and a termination date of September 24, 2009, for United Asia Trading. According to this document, the "reason for leaving" is "Fraud."

f. New Century Media

i.    DaVinci sent an order confirmation for New Century Media to
      Speranza by email on September 23, 2009, at
      georgesperanza@aim.com.  In this email, DaVinci confirmed
      George Speranza, New Century Media, 1455 Bay Ridge Avenue,
      Brooklyn, NY 11219, purchased a "local business presence" at 23rd
      Street Business Center, 991 US Highway 22, Suite 200,
      Bridgewater, NJ 08807.

ii.   A document headed "Customer Call Flow" indicates that calls and
      messages for New Century Media should be forwarded to Ellen
      Simmons.  Emails, faxes, and voicemails should be forwarded to
      nohypenobull@aol.com.  The same document indicates that the
      email address for New Century Media is
      www.newcenturymedia.com.

iii.  A document headed "Disconnect Protocol" reflects a start date of
      September 23, 2009, and a termination date of September 24,
      2009, for New Century Media.  According to this document, the
      "reason for leaving" is "Fraud."

g.   SA Trading

i.    DaVinci sent an order confirmation for SA Trading to Speranza by
      email on September 23, 2009, at georgesperanza@aim.com.  In
      this email, DaVinci confirmed George Speranza, New Century
      Media, 1455 Bay Ridge Avenue, Brooklyn, NY 11219, purchased

23

a "local business presence" at 23rd Street Business Center, 111 NE

1st Street, 3rd Floor, Miami, FL. 33132.

ii.   A document headed "Customer Call Flow" indicates that calls and

messages for South American Trading should be forwarded to

Carlos Vega. Emails, faxes, and voicemails should be forwarded

to nohypenobull@aol.com. The same document indicates that the

email for South American Trading is www.satradingcompany.com.

iii.   A document headed "Disconnect Protocol" reflects a start date of

September 23, 2009, and a termination date of September 24,

2009, for SA Trading. According to this document, the "reason for

leaving" is "Fraud."

35. On October 23, 2009, I issued a subpoena to Excellent Executive Offices, Inc. at

111 NE 1st Street, Suite 300, Miami, FL. 33132, seeking documents relating to SA

Trading, Spongetech, Carlos Vega, and George Speranza. **[Exhibit BB]** Excellent

Executive Offices is affiliated with DaVinci; and provides a variety of office services and

products. Excellent Executive Services maintains its headquarters at 111 NE 1st Street,

Suite 300, Miami, FL. 33132, the same address reflected in the document described in

Paragraph 30.b., and in the documents provided by DaVinci. Excellent Executives Office

responded to the October 23, 2009 subpoena on October 26, 2009. By letter of the same

date, Carsten Werner ("Werner"), General Manager of Excellent Executive Services

informed the staff that he had no knowledge of SA Trading, Spongetech, Carlos Vega, or

George Speranza. **[Exhibit CC]** Werner stated that although none of these companies or

persons is under contract or in negotiations with Excellent Executive Services, the

Executive Center had received one letter and one UPS envelope for SA Trading that were to be returned to the senders.

36. On October 23, 2009, I issued a subpoena to CW Business Center at 8939 S. Sepulveda Boulevard, Suite 102, Los Angeles, CA 90046, seeking documents relating to United Asia, Spongetech, Steven Chin, and George Speranza. **[Exhibit DD]** CW Business Center provides a variety of services and products, including virtual offices and maintains its headquarters at 8939 S. Sepulveda Boulevard, Suite 102, Los Angeles, CA 90046, the same address reflected in the Spongetech document described in Paragraph 30.d., and in the documents provided by DaVinci. CW Business Center responded to the October 23, 2009 subpoena on October 27, 2009. By letter of the same date, Cindy Williams ("Williams"), owner of CW Business Center, stated that she had no documents responsive to the subpoena. **[Exhibit EE]** Williams noted that approximately two months earlier, she had begun to receive mail for United Asia Trading but returned all of the mail with a note stating "Unknown at this address."

## EMAIL ADDRESSES AND WEBSITES

37. In sworn testimony before me and other members of the SEC staff on October 30, 2009, Speranza identified nohypenobull@aol.com and georgesperanza@aim.com as his email addresses. (Speranza, page 133)[1]

38. On October 1, 2009, a Management Analyst in the Office of Internet Enforcement at the SEC captured an image of the website nohypenobull.com.

---

[1]      Exhibit SS contains a consolidation of all testimony transcripts.

a.      In sworn testimony before me and other members of the SEC staff,

Speranza testified that he created and owned the website nohypenobull.com that

he used to promote stocks. (Speranza, pages 33, 47-54)  He testified that he first

profiled Spongetech on this website in the spring or summer of the year 2008.

(Speranza, Pages 53-58 )  He noticed there was a lot of trading in Spongetech

stock and thought that by profiling Spongetech he would attract visitors to his

website. (Speranza, pages 33 and 54)

b.      In or about late September or early October, I visited the website

nohypenobull.com.  Based on my review, I noted that nohypenobull.com

contained a profile of Spongetech, including charts of trading activity, copies of

press releases issued by Spongetech between at least July 2009 and September 25,

2009, and links to Spongetech's website.  The website contained a disclaimer

stating, "NoHypeNoBull was compensated $2500 from a 3rd party for the

coverage of SPNG for 1 month."

39. On or about October 29, 2009, a Management Analyst in the Office of Internet

Enforcement at the SEC captured images of the following websites:

a.      satradingcompany.com;

b.      newcenturymediaco.com;

c.      dubaiexportimportco.com;

d.      fescocorp.com; and

e.      unitedasiatrading.com.

40. I reviewed the contents of these website images and noted that each included

pictures of Spongetech products for sale.

41. On November 18, 2009, I issued a subpoena to Domains by Proxy, Inc. ("Domains by Proxy") seeking the testimony of the custodian of records and subscriber information and communications relating to each of the websites identified in Paragraph 39. **[Exhibit FF]** Domains by Proxy is a company that provides private domain registration services. On December 1, 2009, in response to the November 18, 2009 subpoena, Domains by Proxy provided eight pages of documents and a Certificate of Authenticity. **[Exhibit GG]**

42. I have reviewed the documents produced by Domains by Proxy on December 1, 2009, and note that they contain the following information:

        a.      George Speranza, Speranza Media, is identified as the registrant and administrative, technical, and billing contact for the registration of domain names: dubaiexportimportco.com, fescocorp.com, newcenturymediaco.com, satradingcompany.com, and unitedasiatrading.com. The address associated with each domain name is 1455 Bay Ridge Avenue, 3F, Brooklyn, New York 11219 and the email address is georgesperanza@aim.com. The telephone number associated with each account is 347-733-9942. The address, email address, and telephone number are associated with Speranza.

        b.      According to Domain by Proxy's files, the entry for contact information for George Speranza was created on September 10, 2009 at 7:58:24 a.m. and the Domain by Proxy services for each domain name were purchased and processed on September 10, 2009 at 7:58:26 a.m.

43. During sworn testimony before me and other members of the SEC staff, Speranza testified that he registered the domain names of each website describe in Paragraph 39. (Speranza, pages 62, 70, and 184)

44. On October 26, 2009, I issued a subpoena to Spongetech seeking, among other things, the hard drives assigned to or used by Metter and Moskowitz.  On March 13, 2010, Spongetech provided documents to the SEC staff in response to the October 26, 2009 subpoena. **[Exhibit HH]**  I reviewed a selection of these documents.  I identified a two-page document bates-stamped ST000220436-220437 containing an email thread between georgespearanza@aol.com and Moskowitz at the email address Steven@spongetech.com relating to the website dubaiexportimportco.com. **[Exhibit II]** Steven@spongetech.com is an email address that I later learned was associated with Moskowitz.  At approximately 8:36 p.m. on September 28, 2009, Moskowitz received an email from a person identified as Traci Hogg ("Hogg").  In the email, Hogg attached a link to dubaiexportimportco.com and inquired whether Moskowitz thought that this page was fake.  Hogg stated, "I am hoping it is not your site or set up by Spongetech." Moskowitz forwarded the email to georgesperanza@aol.com at 9:55 p.m. and they began a dialogue in which Moskowitz asked, "Who's site is that below."  Speranza answered by email at 3:06 a.m. on September 29, 2009, "That is the site….its a link to products." Moskowitz replied, "Looks nice."

## GEORGE SPERANZA

45. On October 6, 2009, I issued a subpoena to Speranza seeking his testimony and documents relating to Spongetech, Fesco Corp., United Asia Trading, and Dubai Export Import Company. **[Exhibit JJ]**

28

46. In response to the October 6, 2009 subpoena and related correspondence, on October 23, 2009, Speranza sent a letter to me via facsimile. **[Exhibit KK]**  In this letter, Speranza made the following statements:

      a.      He had been President of No Hype Media, Inc., a marketing and consulting firm in Brooklyn, NY that, among other things, designed and developed websites and logos for its clients.  According to Speranza's letter, until August 2009, No Hype Media operated "nohypenobull.com," a stock promotion website.  He attested that he never received any compensation from Spongetech in connection with profiling Spongetech on this website;

      b.      He became aware of Spongetech in 2008 and assisted the company as an independent contractor, providing marketing services without receiving compensation from Spongetech;

      c.      In February or March 2009, he was asked to design websites for Fesco., United Asia, Dubai, Mulit Media (Multi Media), New Century Media, and SA Trading by a man that he did not know and with whom he had not spoken since.  Speranza wrote that he did not know whether this man has any connection with Spongetech;

      d.      He was not paid by the companies or anyone else after registering and designing each of the websites; and

      e.      He was not involved whatsoever with the companies, did not know what they do, and had no continuing contact with them.

47. On October 30, 2009, Speranza appeared for sworn testimony before me and other members of the SEC staff.

a.      When I questioned Speranza about his knowledge of Jim Rogers of Fesco, he testified that Jim Rogers did not exist.  Speranza explained, "Jim Rogers is my contact there so nobody calls George Speranza and does this (indicating) and then puts me all over the internet.  Jim Rogers was the contact that I made.  I made the name Jim Rogers so that I could avoid that."  (Speranza, page 94) Similarly, Speranza testified that he came up with the names Steven Chin, Helen Simms, and Ahmed Elsayed.  (Speranza, pages 102-104)  He was unsure whether he had created the name Carlos Vega.

b.      Speranza also testified that he established virtual offices and corresponding telephone numbers with DaVinci, and then later with Regus, for SA Trading, Dubai, New Century Media, Fesco, Multi Media, and U S Asia Trading in late September 2009.  (Speranza, pages 86-91 and 167-176)  Speranza established these offices using a debit card linked to a bank account for his company, NoHype Media, and gift cards that he purchased with his own funds. (Speranza, pages 123-124 and 126)

c.      In response to the September 4, 2009 subpoena, Spongetech provided an email thread bates-stamped ST098639-98642 reflecting communications on September 28, 2009 between greenwich4@aol.com, an email address that I later learned was associated with Metter, and georgespearanza@aim.com, an email address that I later learned was associated with Speranza. **[Exhibit LL]**  The email thread begins at 5:41 a.m. and ends at approximately 8:14 p.m.  Three of the emails are copied to, among other persons, MSiegel@brownrudnick.com.

i.   I showed this email to Speranza during his testimony.  He testified
     that he was familiar with the email exchange and confirmed that
     greenwich4@aol.com is an email address associated with Metter.
     (Speranza, page 176)

ii.  I reviewed this email thread and note that the email at 5:41 a.m.
     from greenwich4@aol.com states, in relevant part, "It is very
     important that you contact me with the numbers that Steven said
     you were going to supply for the regulators."

iii. An email at approximately 1:27 p.m. from
     georgesperanza@aim.com to greenwich4@aol.com, is addressed
     to Michael and reads, "The company that I contacted for the
     numbers and offices is processing everything right now.  They
     apologized for the delay but said that this is the way it works.  I
     also received a call from the SEC atty today in regards to Fesco
     corp.  What is going on?  I don't understand this at all, and I am
     very upset......" As described in Paragraph 28, documents and
     information that I collected show that Speranza established virtual
     offices through Regus for SA Trading, New Century Media, Fesco,
     Dubai, and United Asia on or about September 25, 2009.  In
     addition, as described in Paragraph 21, I conducted a voluntary
     telephone interview with Speranza during which I inquired about
     Fesco and Jim Rogers.

iv.     At approximately 4:59 p.m., georgesperanza@aim.com wrote an

email listing the following entities and telephone numbers: SA

Trading 305-913-7538, Fesco 646-290-290-5005, and United Asia

972-789-5125.  A later email indicates that there was a typo in the

original email and the telephone number for Fesco is 646-290-

5039.  These were the same telephone numbers that Siegel

provided to the staff on September 25, 2009.  A document

produced by Regus on October 1, 2009, relating to a virtual office

shows that Regus assigned the telephone number 972-789-5125 to

United Asia.  In addition, as described in Paragraph 19, I attempted

to contact Carlos Vega of SA Trading, Jim Rogers of Fesco, and

Steven Chin of United Asia at these telephone numbers between

September 28, 2009, and September 29, 2009.  Based on those

inquiries, I learned that the telephone number for Fesco was

associated with a virtual office hosted by Regus.  I later learned

through the testimony of Speranza that the telephone numbers for

SA Trading and United Asia were also associated with virtual

offices hosted by Regus.

d.     Consistent with Speranza's October 23, 2009 letter to me described in

Paragraph 46, Speranza also testified that he designed websites for SA Trading,

Fesco, New Century, Dubai, Multi Media, and US Asia.  (Speranza, pages 61- 62,

69-70, 149)  He testified that he completed the websites by approximately

September 15 and loaded them onto the internet. (Speranza, page 94)  Speranza

testified that he had never had any contact with any of the entities for which he designed websites. (Speranza, pages 71, 99) Specifically, Speranza testified "I made websites for that reason, was never paid and I had no idea what these websites were for. They're registered to George Speranza, like I said. My license, my credit card, everything paid for those. So I'm not hiding anything;..."(Speranza, page 70)

     i.    During Speranza's testimony, I showed him electronic images of the websites satradingcompany.com, newcenturymediaco.com, dubaiexportimportco.com, fescocorp.com; and unitedasiatrading.com. As described in Paragraph 39, these images were downloaded by a management analyst at the SEC on October 29, 2009. Speranza testified that he created the websites by cutting and pasting information from various sources on the internet. (Speranza, pages 73-74, 152) For example, with respect to the website for Dubai, he testified, "That's just a cut and a paste. I found it somewhere. This was all like cut and paste. What does an import export company do? I'm not in that business. I was searching import export -- poof, I'll copy this, I'll put it there. That's all this was, was cut and paste. None of this did I think of in my mind to write. I cut and pasted most of it, you know? Most of it was in a foreign language too. I'd have to Google, you know, where it changes the language?" (Speranza, page 152)

ii.   Speranza testified that all of the emails sent to the websites that he created were sent to his own email account (Speranza, pages 71-72, 168-169).  During testimony, Speranza provided me with copies of emails that he had received from these websites. (Speranza, page 72)  I reviewed these emails and noted that between September 23, 2009, and October 9, 2009, Speranza received at least nine emails through the websites that he created inquiring about the existence of Dubai and SA Trading and the relationship between each entity and Spongetech. [**Exhibit MM**] Consistent with the emails that he provided, Speranza testified that shareholders sent emails to the websites inquiring whether the certain of the customers existed. (Speranza, pages 88-89)

iii.   Speranza further testified that he would continue to maintain the websites that he created for each entity. (Speranza, pages 98 and 193)  [On May 8, 2010, I conducted an internet search for each of the websites.  None of the websites is active or available.]

e.   When I asked Speranza whether he ever received any compensation for creating websites for each of Spongetech's six largest customers or for establishing virtual offices for these customers, he said that no one ever paid him. (Speranza, pages 65, 70, 73, 109, 112, and 180)  [The SEC staff obtained certain bank records during the course of its investigation.  I reviewed certain of those records, including checks made to the order of Speranza.  On September 1, 2009, RM Enterprises International, Inc. ("RM Enterprises"), a company that I learned

is affiliated with Spongetech, issued a check for $10,000 to Speranza. [**Exhibit NN**] On September 16, 2009, RM Enterprises issued another check to Speranza for $5,000.] [**Exhibit OO**]

### MOSKOWITZ TESTIMONY REGARDING CUSTOMERS

48. On October 8, 2009, Moskowitz testified, under oath, before me and other members of the SEC staff.  Moskowitz testified that SA Trading, New Century Media, Dubai, Fesco, Multi Media, and US Asia were among Spongetech's top 10 customers for the year ended May 31, 2009.  (Moskowitz, page 145)  Moskowitz identified Carlos Vega, who he also referred to as Carlos Varga, as a buyer for SA Trading (Moskowitz, Pages 221-222, 403-404) and Ahmad Elsayed, who he referred to as Achmade, as a purchasing agent and traffic manager for Dubai (Moskowitz, pages 218-219). Moskowitz testified that he met Carlos Vega at an auto show in 2007. (Moskowitz, pages 169-170)  He also testified that Metter introduced him to Ahmad Elsayed at an auto show in 2007 or 2008. (Moskowitz, page 219)  Moskowitz further testified that Ellen Simms was his contact at New Century Media (page 223, 411) and David Chin was his contact at US Asia. (Moskowitz, page 222)  During Moskowitz's testimony, I questioned him about his communications with contacts for SA Trading, Dubai, New Century, US Asia, and Fesco following the staff's request for contact information for each of these entities. Moskowitz testified that between Friday, September 25, 2009, and Monday, September 28, 2009, he had two telephone conversations with Carlos Vega or Carlos Varga relating to SA Trading, two telephone conversations with Chin regarding US Asia, and at least one conversation each with Jim Rogers regarding Fesco, Ellen Simms, regarding New Century Media, and Ahmed Elsayed regarding Dubai. (Moskowitz, pages 403-415)  As

described in Paragraph 47, Speranza testified that Jim Rogers does not exist and that he made the names Ahmed Elsayed, Helen Simms, and Steven Chin in connection with establishing virtual offices.

## METTER TESTIMONY REGARDING CUSTOMERS

49. On October 13, 2009, Metter testified, under oath, before me and other members of the SEC staff.  Metter testified that SA Trading, Fesco, Dubai, US Asia, and New Century were Spongetech's biggest customers. (Metter, page 263)  Metter testified that he associated Carlos Vega with SA Trading. (Metter, pages 255, 272)  Similar to Moskowitz's testimony, Metter testified that he had met Carlos Vega at an auto show in 2007. (Metter, page 272)  Metter also testified that he understood David Chan to be associated with US Asia, Ahmed Elsayed to be associated with Dubai, and Jim Rogers to be associated with Fesco.  Metter further testified that he had met Ahmed Elsayed at a show a few years before. (Metter, pages 272-273)  As described in Paragraph 47, Speranza testified that Jim Rogers does not exist and that he made the names Ahmed Elsayed, Helen Simms, and Steven Chin in connection with establishing virtual offices.

## PURCHASE ORDERS

50. On multiple occasions in October 2009, I and another member of the SEC staff asked Spongetech, through its counsel, to provide purchase orders relating to Spongetech's six largest customers.  On October 26, 2009, Spongetech's counsel produced, by email, documents that she represented were purchase orders for Dubai, SA Trading, US Asia, New Century Media, and Fesco for the period November 2007 through March 2009. **[Exhibit PP]**  These documents are bates-stamped ST101653-101701.

Counsel advised the staff that Spongetech was continuing its search for additional purchase orders. Counsel for Spongetech also noted that Spongetech had inadvertently identified the contact person at US Asia as Even Chin and that the correct name was Steven Chin, as identified in the purchase orders.

51. On the same date, by email, I asked Spongetech's counsel to identify, among other things, the source of the purchase orders, the name and the title of the custodian of the documents, and the location where the purchase orders were found. **[Exhibit QQ]** I also requested that counsel identify one or more persons who may be able to testify as to the authenticity of the purchase orders. The staff also requested that Spongetech produce the original purchase orders. Spongetech's counsel responded to my requests for information on November 19, 2009. By email, counsel informed me that the Moskowitz found the purchase orders at Spongetech's offices and therefore would be the appropriate person to testify about these documents. **[Exhibit RR]**

52. On October 28, 2009, during the testimony of Frank Lazauskus, Chairman of Spongetech's Audit Committee, Siegel, counsel for Spongetech presented the staff with a set of documents that did not bear bates-stamps. While on the record, Siegel represented that these documents were Spongetech's originals and color copies of documents that had been gathered from Spongetech's files. (Lazauskus, pages 14-15) In the November 19, 2009 email, Spongetech's counsel confirmed that the purchase orders provided on October 26 and October 28, 2009, are either copies or Spongetech originals as all "original purchase orders remain with the customers." **[Exhibit RR]**

53. I have reviewed the purchase orders provided on October 26, 2009, and October 28, 2009. I note that the purchase orders bear the names of Ahmed Elsayed, and Jim

Rogers and the name and signature of Steven Chin – all names that Speranza testified that he made up in September 2009 when he was establishing virtual offices.  Similar to the invoices provided by Spongetech, the purchase orders reflect various ports and an airport terminal as the address for each of the entities.  In addition, the purchase orders reflect telephone numbers assigned by Regus to the virtual offices that Speranza established.

I declare under penalty of perjury that the foregoing is true and correct.

Christine E. Neal

Executed on May 13, 2010
Washington, DC 20549