UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SPONGETECH DELIVERY SYSTEMS, INC., RM ENTERPRISES INTERNATIONAL, INC., STEVEN Y. MOSKOWITZ, MICHAEL E. METTER, GEORGE SPERANZA, JOEL PENSLEY, and JACK HALPERIN,<br><br>Defendants. | Civil Action No. 10-CV-2031 (DLI) |

**DEFENDANT SPONGETECH DELIVERY SYSTEMS, INC.'S
OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S MOTION TO APPOINT A RECEIVER**

Paul R. Bessette
Jesse Z. Weiss (admitted *pro hac vice*)
Kimberly G. Davis (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
300 West Sixth, Suite 2050
Austin, TX  78701
Tel:  512.320.7200
Fax:  512.320.7210

Jeffrey B. Sklaroff
Lauren Grassotti
Ryan Harsch
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: 212.801.2130
Fax:  212.801.6400

Defendant Spongetech Delivery Systems, Inc. ("Spongetech" or "the Company") respectfully submits this Memorandum of Law in opposition[1] to the motion of the Securities and Exchange Commission ("SEC" or "the Commission") to appoint a receiver.

## PRELIMINARY STATEMENT

In seeking the appointment of a receiver, in combination with its pending motion to freeze Spongetech's assets, the SEC is continuing its quest to put Spongetech out of business against shareholder wishes. The appointment of a receiver -- especially the one proposed by the SEC -- will result in the termination of Spongetech's business, the liquidation of its assets, and the destruction of any shareholder value. Yet, despite the disastrous impact of the relief it seeks, the SEC has failed to demonstrate its entitlement to this extraordinary remedy.

The SEC has come forward with no evidence that the Company is currently dissipating assets, violating securities laws, or doing anything detrimental to shareholder interests. To the contrary, the Company has taken numerous steps to secure its business, protect its assets, and preserve shareholder value. Indeed, many Spongetech shareholders have strenuously objected to the SEC's motion precisely because the appointment of a receiver will surely mean the end of Spongetech and the loss of their investments.

Spongetech recognizes that, given the current state of affairs, it may be useful to bring in a third party to exercise some form of oversight or operational authority over the Company's affairs. Indeed, in an effort to work with the SEC to achieve a result that would allow the Company to remain in business, Spongetech has taken numerous actions: (1) the CEO resigned;

---

[1] On June 28, 2010, Spongetech filed with the Court a letter opposing the SEC's request to have the Court consider the motion to appoint a receiver on an expedited basis. In the letter, Spongetech informed the Court that Greenburg Traurig LLP ("GT") was seeking to withdraw as counsel for Spongtech due to a potential conflict of interest with its joint representation of Michael E. Metter. GT still plans to withdraw as counsel for Spongetech and the Company is working diligently towards finding new counsel. The filing of this Opposition does not implicate any potential conflict of interest.

(2) an additional board members has been elected; and (3) through counsel, the Company provided the SEC with a list of eight names of highly qualified individuals who could step in and continue to operate the Company -- thereby increasing its business, preserving its assets, and protecting the investment of shareholders -- all while reporting to the SEC and the Court. Inexplicably, the SEC failed to contact any of the eight candidates or any other candidate focused on turning around, not liquidating, Spongetech.  Accordingly, the SEC's motion, which ensures the demise of the Company, should be denied.

## STATEMENT OF FACTS

As set forth in Spongetech's opposition to the SEC's pending motion for an asset freeze,[2] Spongetech is a going concern that sells over sixty different products, most of which it manufactures at a plant owned by Dicon Technologies LLC ("Dicon") (together with Spongetech the "Companies"), its wholly-owned subsidiary, in Black Creek, Georgia.  Spongetech and Dicon together employ over twenty individuals and maintain a staff of over fifty sales representatives who work on commission.  The Companies' total net sales for the past eleven months is approximately $7.7 million.  In addition, the Companies intend to grow modestly over the next three to six months, increasing the sales force and expanding the product lines.  The operations of the Companies are highly integrated and neither Spongetech nor Dicon could easily function independently.

On June 8, 2010, in an effort to address the SEC's concerns regarding management's continued participation in Spongetech's operations, and to obviate the need for any related asset freeze and thereby protect Spongetech's shareholders, the Company took a series of steps, including accepting the resignation of defendant Michael Metter as CEO of Spongetech.

---

[2] *See* Declaration of Jesse Z. Weiss dated June 16, 2010 (Dkt. # 42), Declaration of Laureen Ryan dated June 16, 2010 (Dkt. # 41), and exhibits thereto submitted in opposition to the SEC's Motion For Preliminary Injunction, Asset Freeze, and Other Relief.

3

On June 18, 2010, subsequent to the SEC's filing of this Motion, certain petitioning creditors filed an involuntary bankruptcy petition against Dicon in the United States Bankruptcy Court for the Southern District of Georgia, Savannah Division (the "Bankruptcy Court"). Although the SEC tries to make much of the Bankruptcy Court's decision on June 24 to appoint a chapter 11 trustee for Dicon, the fact is that, after hearing from the Companies for the first time, the Bankruptcy Court stayed its own decision.  On June 28, 2010, the Companies filed an emergency motion seeking reconsideration and a stay of the order appointing a chapter 11 Trustee.  The Companies showed, among other things, that the testimony and allegations upon which the Bankruptcy Court initially relied -- including allegations that assets were being dissipated -- were wrong.  Dicon and Spongetech also demonstrated that, like the appointment of a receiver here, the appointment of a trustee for Dicon would cause immediate and irreparable harm to Spongetech and Dicon.  (*See* Declaration of R. Adam Swick dated July 9, 2010 ("Swick Decl."), Exhibit ("Ex.") A.)  By order dated June 29, 2010, the Bankruptcy Court granted the Companies' application and stayed entry of the order appointing a trustee.  (Swick Decl., Ex. B.)

Despite the pending civil and criminal actions, Spongetech's shareholders continue to believe in the growth potential of the Companies.  Many have expressed to the Court their objections to the appointment of a receiver and their strong desire that Spongetech remain in business.  For example, one shareholder asks the Court to "find a way to let Spongetech, Inc. survive with a new CEO and not receivership as the SEC is suggesting because of the small shareholders who have lost thousands of dollars in a company that has great products and future growth and only needs good leadership." (Swick Decl., Ex. C.)  Another shareholder states emphatically that Spongetech shareholders "<u>DO</u> <u>NOT</u> want receivership" and that "receivership . . . would completely destroy our company." (Swick Decl., Ex. D (emphasis in original).)

4

One shareholder has been particularly articulate in his criticism of the SEC's quest to put the Company out of business:

> [T]he SEC seems to be taking actions -- rather hastily and without due course I might add -- to restrict the company from operating and continuing to produce products that are selling in retail outlets. A reasonable person must ask why this is happening. Why punish the employees and shareholders of a company if the allegations are aimed at the persons in charge? In effect, [the SEC] is causing harm to investors by suggesting the company cannot be a going concern.
>
> * * *
>
> As a shareholder I want good management in place to give both shareholders and customers the best possible opportunity to succeed. In fairness, that cannot happen if the SEC's desires are exercised before giving the company the opportunity to share their side of the story. In addition, even if there was [sic] wrong doing by management, why should shareholders, employees and customers of this small business be required to suffer by having the company essentially cut open and drained of its assets? How does that protect investors?
>
> * * *
>
> But the opportunity for the company to survive and to continue to provide jobs to employees, products to customers and a unique investment to shareholders all stops if this company is forced to liquidate assets or is placed into receivership at the SEC's request.
>
> * * *
>
> What I am witnessing in this case is a plaintiff that is attacking a company at every angle possible in an attempt to close the doors of the defendant. Whether not by design or by circumstance, those actions will harm investors of this company.
>
> * * *
>
> As a shareholder I also am owner of the assets the SEC would like to dissolve and I protest to the highest degree that my voice be heard and that I and other shareholders be allowed to keep the doors of the company open, and that the Court allow us to choose new management and the [sic] determine the proper course of action for the company.

(Swick Decl., Ex. E.)

5

As reflected by the shareholders' letters, the appointment of a receiver will cause the very harm the SEC is charged with preventing: wiping out the Company's shareholders.

The appropriate remedy is not the appointment of a receiver to preside over Spongetech's demise; but rather, either for this Court to appoint some form of monitor to oversee corporate expenditures and bank accounts or for Spongetech to hire an independent Chief Restructuring Officer. In either case, any third party should be brought in to restructure and continue Spongetech's business -- not liquidate it. In a good faith effort to work with the SEC to achieve this result, Spongetech's former CEO resigned and a new board member has been elected. (Swick Decl., Ex. F.) And, through counsel, the Company provided the SEC with a list of eight names of highly qualified individuals who could step in and continue to operate the Company to increase business, preserve its assets, and protect the investment of shareholders -- all while reporting to the SEC and the Court. The SEC refused to contact even a single candidate and continued its crusade to liquidate Spongetech.

## ARGUMENT

### The SEC's Motion For The Appointment Of A Receiver Should Be Denied

**A.     The Applicable Legal Standards**

"The appointment of a receiver is an 'extraordinary remedy to be invoked only in cases of necessity and upon a clear showing that an emergency exists' to 'prevent a diversion or waste of assets to the detriment of those for whose benefit' the action is being brought." *SEC v. Universal Express, Inc.*, No. 04 Civ. 2322, 2007 WL 2469452, at *3 (S.D.N.Y. Aug. 31, 2007); *accord SEC v. Am. Bd. of Trade, Inc.*, 645 F. Supp. 1047, 1052 (S.D.N.Y. 1986). The Second Circuit has instructed that "the appointment of [receivers] should not follow requests by the SEC as a matter of course . . . ." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir.

6

1972). Accordingly, courts routinely impose less drastic remedies before placing a company in full receivership, such as appointing a Special Master or Monitor to approve disbursements, approve expenditures, and control bank accounts. *See*, *e.g.*, *SEC v. Friedlander*, 49 Fed. Appx. 358, 360 (2d Cir. 2002) (commending district court for taking "a measured approach to preliminary relief in the present case, giving [defendant] the benefit of the doubt initially, and only imposing an injunction and appointing a receiver after he failed to act in accordance with commitments he had made to the court"); *Am. Bd. of Trade, Inc.*, 645 F. Supp. at 1052 (appointing receiver only after it became clear that the initial appointment of Special Master to approve all expenditures would "not prevent the continued diversion and waste of defendants' assets"). In fact, "lack of less drastic equitable remedy" is often cited as a factor in whether to appoint a receiver. *See*, *e.g.*, *De Boer Structures (U.S.A.), Inc. v. Shaffer Tent and Awning Co.*, 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001).

   The appointment of a receiver is especially inappropriate where it would "disrupt [corporate] operations and instead of preserving the assets allegedly belonging to public investors could be disastrous to them…." *SEC v. Petrofunds, Inc.*, 414 F. Supp. 1191, 1198 (S.D.N.Y. 1976); *see SEC v. Brigadoon Scotch Distribs., Ltd.*, 388 F. Supp. 1288, 1293 (S.D.N.Y. 1975) (denying motion for receiver where "it appear[ed] that the expense which a receivership would involve would not only impose an undue burden on the defendants but could jeopardize the interests of the public as well"). This is certainly the case here, where the SEC has made clear its intent to liquidate Spongetech, a particularly disastrous outcome for shareholders.

7

**B.      The Facts Of This Case Do Not Justify This Extraordinary Remedy**

Here, the Court is not faced with an "extraordinary situation" warranting the "extraordinary remedy" of appointing a receiver over Spongetech. *See Universal Express, Inc.*, 2007 WL 2469452, at *12. Indeed, as set forth in the Company's opposition to the SEC's prior motion to freeze its assets, Spongetech took a series of steps to ensure that its assets and business will be protected, including accepting the resignation of the Company's former CEO. And since that time, an additional board member has been elected. But despite these efforts, the SEC makes the bald assertion that only a receiver will protect the Company's shareholders. In fact, those shareholders who have expressed their views strongly reject the appointment of a receiver for reasons that are beyond dispute -- the SEC's receiver will liquidate and destroy the Company. *See Petrofunds, Inc.*, 414 F. Supp. at 1198; *Brigadoon Scotch Distribs., Ltd.*, 388 F. Supp. at 1293.

**C.      There Are Far Less Drastic Remedies -- And Far More Qualified Candidates -- To Preserve Shareholder Value**

In its single-minded zeal to shut down the Company, the SEC has proposed a form of Order appointing a receiver that has as its primary objective to liquidate Spongetech.[3] In the pursuit of this objective, the SEC has proposed as receiver a person whose only real experience is in presiding over business terminations and wind-downs. As is apparent from Mr. Hayes' resume, he has no significant experience operating a business of this type and there is little evidence that he has the resources or skills to do so. To the contrary, the bulk of Mr. Hayes'

---

[3] *See* Swick Decl., Ex. G. For example, the proposed Order provides that "the Receiver is immediately authorized, empowered and directed: to list for sale, engage a broker for sale, cause the sale [of the Company's] Assets, and take all necessary and reasonable actions to cause the sale of such Assets", and "to sell, liquidate or otherwise dispose of any such Assets, even if such actions result in the termination of such company's business activities," and to "[t]ake all reasonable and necessary actions to manage, maintain, and, as appropriate, restructure, sell, wind-down business operations of Spongetech. . . . " Swick Decl., Ex. G ¶¶.I.B, I.F., and I.L.

8

experience involves overseeing the liquidation of companies. Given his background and experience, and his title of "Receiver," Mr. Hayes' appointment will send the unmistakable message to Spongetech's customers, suppliers, creditors, and employees that Spongetech is liquidating.

As the case law makes clear, remedies less severe and disruptive than the appointment of a receiver must be considered. There is no reason in this case that shareholder interests cannot be adequately protected by a Court appointed monitor or Spongetech's hiring of an independent Chief Restructuring Officer with the authority to approve disbursements and expenditures and control bank accounts. *See SEC v. Am. Bd. of Trade, Inc.*, 645 F. Supp. at 1052.

Spongetech's counsel has met with the SEC in an effort to reach agreement on a series of steps that would result in the independent management of Spongetech, subject to the SEC's approval, whose mission would be to operate -- not liquidate -- Spongetech. Spongetech provided the SEC with a list of eight individuals each of whom had actual, hands-on experience in operating companies of a similar kind and who did so while under governmental or judicial oversight. (*See* Swick Decl., Ex. H.) These candidates were recommended either by Alvarez & Marsal, the forensic accountants who were retained by the Company through counsel in January, 2010, or by Spongetech's counsel based on its own, first-hand experience in working with the candidate in other cases. (*See* Swick Decl., Ex. I.) Inexplicably, the SEC failed to contact a single candidate prior to moving for the appointment of Mr. Hayes as receiver.

The Company and its shareholders do not need or want a receiver to oversee the Company's liquidation. If anything, the Court should consider an independent third-party to act as a Court appointed monitor or as a hired Chief Restructuring Officer to send a powerful signal to the business community that Spongetech is fully open for business and intends to remain so in

9

the future.  It is that message, not the "going out of business" sign of a receiver, that will best protect and preserve shareholder value.

**D.      The Court Should Hold A Hearing Appointing A Receiver**

Spongetech respectfully requests an evidentiary hearing before the Court rules on the SEC's motion.  *See SEC v. Bravata,* No. 09-12950, 2009 WL 2245649, at *4 (E.D. Mich. July 29, 2009) (denying SEC's ex parte motion for the appointment of a receiver and holding defendants were entitled to a hearing).  Among other things, the SEC should be required to come forward with sufficient evidence to justify the relief it seeks.  The matters at issue are too important, and the stakes to shareholders are too high, to rule on this motion solely on the basis of the SEC's papers.

## CONCLUSION

For all of the foregoing reasons, Spongetech respectfully requests that this Court deny the SEC's motion for the appointment of a receiver and that it grant such other and further relief as it deems just.

Dated:  July 9, 2010

                              Respectfully submitted,

                              */s/ Paul R. Bessette*
                              Paul R. Bessette
                              Jesse Z. Weiss (admitted *pro hac vice*)
                              Kimberly G. Davis (admitted *pro hac vice*)
                              GREENBERG TRAURIG LLP
                              300 West Sixth, Suite 2050
                              Austin, TX  78701
                              Tel:  512.320.7200
                              Fax:  512.320.7210

                              Of Counsel:

                              Jeffrey B. Sklaroff
                              Lauren Grassotti

>Ryan Harsch
>GREENBERG TRAURIG LLP
>MetLife Building
>200 Park Avenue
>New York, NY 10166
>Tel: 212.801.2130
>Fax:  212.801.6400
>
>***Counsel for Defendants Spongetech Delivery Systems, Inc. and Michael E. Metter***

## CERTIFICATE OF SERVICE

    I hereby certify that on July 9, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.  I further certify that I sent by email the foregoing document and the notice of electronic filing to all non-CM/ECF participants.

                                            */s/ Paul R. Bessette*

AUS 536,082,094v4 7-9-10