UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
U.S. SECURITIES AND EXCHANGE
COMMISSION,

                                Plaintiff,

     -against-

SPONGETECH DELIVERY SYSTEMS, INC.,
RM ENTERPRISES INTERNATIONAL, INC.,
STEVEN Y. MOSKOWITZ, MICHAEL E. METTER,
GEORGE SPERANZA, JOEL PENSLEY, and JACK
HALPERIN,

                          Defendants.
-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
10-CV-2031 (DLI) (JMA)

APPEARANCES:

Jeffrey T. Tao
100 F Street N.E.
Washington, D.C. 20549-4010
    *Attorney for Plaintiff*

**AZRACK, United States Magistrate Judge:**

On May 5, 2010, the U.S. Securities and Exchange Commission ("SEC") commenced this enforcement action against defendants Spongetech Delivery Systems, Inc. ("Spongetech"), RM Enterprises International, Inc. ("RM Enterprises"), Steven Y. Moskowitz ("Moskowitz"), Michael E. Metter ("Metter"), George Speranza ("Speranza"), Joel Pensley ("Pensley"), and Jack Halperin ("Halperin"), alleging violations of several securities laws and rules. Compl., ECF No. 1. Defendants RM Enterprises and Speranza are the subjects of the motion for default judgment presently before this Court. See ECF No. 140.

The SEC alleges that defendant RM Enterprises violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act

of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5; and Section 5 of the Securities Act, 15 U.S.C. § 77e. See Compl. ¶¶ 111–126. The SEC also claims that defendant Speranza violated Exchange Act Section 10(b) and Exchange Act Rule 10b-5, and aided and abetted violations of the same. See id. ¶¶ 114–116, 121–123.

The SEC properly served Speranza on May 21, 2010, and properly served RM Enterprises via its registered agent on May 27, 2010.[1] ECF Nos. 25, 13. Neither defendant has appeared or otherwise defended against the action. The SEC moved for an entry of default on March 31, 2011, which the Clerk of Court granted on April 8, 2011. See ECF Nos. 125, 137. On April 13, 2011, the SEC moved for a default judgment as to RM Enterprises and Speranza. The Honorable Dora Irizarry referred the SEC's motion for default judgment to me for a report and recommendation as to liability and damages. ECF Order, dated April 14, 2011.

For the reasons set forth below, I respectfully recommend that the motion for default judgment against RM Enterprises and Speranza be granted as to liability, but only recommend granting damages against Speranza at this time.

## I. BACKGROUND

Spongetech is a publicly-traded company that sells soap-filled sponges.[2] The SEC alleges that defendants engaged in a "pump and dump" scheme, wherein defendants Metter,

---

[1] The SEC requests that the Court enter a default judgment against RM Enterprises International, Inc., which also goes by the name RM Enterprises International, Ltd. The SEC submitted several documents which indicate that the two corporate names are used interchangeably. See Declaration of Charles C. Davis, Jr. ("Davis Decl."), Exs. 1-4, dated Apr. 13, 2011, ECF No. 142. The registered agent for RM Enterprises International, Ltd. accepted service of the summons and complaint, which was directed to RM Enterprises International, Inc., and also later purported to be the registered agent for RM Enterprises International, Inc. See Davis Decl. ¶ 4, Ex. 5. It is therefore clear that RM Enterprises was properly served and has notice of this suit. See Clerk's Entry of Default, ECF No. 137; see also J & J Sports Productions, Inc. v. Arhin, No. 07-CV-2875, 2009 WL 1044500, at *3 (E.D.N.Y. Apr. 17, 2009) (finding that service was proper despite omission of "Inc." because the principal who received the summons and complaint could not have been confused as to the intended defendant).

[2] Spongetech petitioned for bankruptcy on July 9, 2010. See ECF No. 92. On July 19, 2010, the Bankruptcy Court directed the appointment of a trustee over Spongetech, and, on July 20, 2010, the trustee was approved. See ECF No. 93.

Moskowitz, and Spongetech "pumped" the value of Spongetech's stock by flooding the market with false public information, and then "dumped" the shares by illegally selling them to the public in unregistered transactions. Compl. ¶ 1.

The SEC alleges that Metter and Moskowitz made material misrepresentations to inflate the value of Spongetech stock. Id. From its inception in 1999 until April 2007, Spongetech's sales were mostly limited to a single customer. Id. ¶ 26. However, the SEC alleges that around April of 2007, Metter, Moskowitz, and Spongetech began issuing fraudulent press releases that exaggerated Spongetech's sales orders and revenue in order to improve the company's image. Id. ¶¶ 27–29. For example, press releases referenced business from five customers that did not exist,[3] understated the volume of Spongetech's outstanding shares, and falsely claimed that Spongetech intended to reduce its outstanding shares. Id. The SEC also alleges that Metter, Moskowitz, and Spongetech made false or misleading statements in Spongetech's public SEC filings. Id. ¶ 42. Moreover, the SEC alleges that Spongetech, Moskowitz, and Metter produced false and misleading purchase orders, invoices, and bills of lading in response to a subpoena served on Spongetech on September 4, 2009. Id. ¶ 67.

Metter and Moskowitz controlled RM Enterprises, the majority shareholder of Spongetech. Id. ¶¶ 2, 18. RM Enterprises acted as a conduit through which Metter, Moskowitz, and Spongetech illegally distributed approximately 2.5 billion shares of Spongetech through unregistered transactions at inflated prices. Id. ¶¶ 69–70.

Defendant Speranza is a self-employed consultant associated with Spongetech. Id. ¶ 21. He operates the internet stock market site "nohypenobull.com." Id. Speranza participated in the

---

[3] The SEC states that the press releases referenced orders, business, and revenue primarily from five fictitious entities that did not place orders or do business with Spongetech: SA Trading, US Asia, Dubai, Fesco, and New Century. Compl. ¶ 28.

alleged fraud by creating internet websites and virtual office space for the fictitious Spongetech customers. Id. ¶ 28. The SEC claims that RM Enterprises hired Speranza to make the fictitious Spongetech customers appear legitimate, thus facilitating the underlying "pump and dump" scheme.[4] Id. ¶ 56. For example, Speranza is alleged to have maintained the fictitious customers' websites, forwarded all emails, faxes, and voicemails received by the virtual offices to his own email account, fabricated contact persons for the fictitious customers, and arranged for physical space for the fictitious customers. Id. ¶¶ 55–66.

## II. DISCUSSION

### A. Liability

The SEC moves for an entry of default judgment against RM Enterprises and Speranza pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 55(b)(2) and Local Rule 55.2(b). In order to obtain a judgment, a two-step process exists. James v. Arango, No. 05-CV-2593, 2011 WL 1594832, at *7 (E.D.N.Y. Mar. 28, 2011). First, when a party has failed to plead or otherwise defend, the clerk enters the party's default pursuant to F.R.C.P. 55(a).[5] Id. Next, the moving party may make an application for entry of default judgment pursuant to F.R.C.P. 55(b).[6] Id. In this case, the Clerk entered a default as to RM Enterprises and Speranza. Presently before the court is the SEC's motion for entry of a default judgment as to these defendants.

---

[4] RM Enterprises paid Speranza $10,000 on or about September 1, 2009, and an additional $5,000 on or about September 10, 2009. Compl. ¶ 55.

[5] See also Local Rule 55.1 ("A party applying for a certificate of default by the clerk pursuant to Federal Rule of Civil Procedure 55(a) shall submit an affidavit showing (1) that the party against whom a notation of default is sought is not an infant, in the military, or an incompetent person; (2) that the party has failed to plead or otherwise defend the action; and (3) that the pleading to which no response has been made was properly served.").

[6] See also Local Rule 55.2(b) ("In all other cases the party seeking a judgment by default shall apply to the court as described in Federal Rule of Civil Procedure 55(b)(2), and shall append to the application (1) the clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment.").

4

A default constitutes an admission of all well-pled factual allegations in the complaint. First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc., No. 10-CV-4398, 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). Upon default, the court accepts the allegations pertaining to liability as true. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). "In determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." First Mercury, 2011 WL 883757, at *1. These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir. 1991); see also First Mercury, 2011 WL 883757, at *1.

First, "[a] default judgment is ordinarily justified where a defendant fails to respond to the complaint." SEC v. Anticevic, No. 05-CV-6991, 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)). RM Enterprises and Speranza were properly served with a copy of the summons and complaint and failed to respond. Moskowitz and Metter, co-defendants and officers of RM Enterprises, appeared in this action; however, they failed to retain counsel to appear or answer on behalf of RM Enterprises. Therefore, the failure of RM Enterprises and Speranza to respond to the properly served complaint evinces that their default was willful. Second, in light of the defaulting defendants' failure to respond, there is no indication that requiring the SEC to take further steps prior to a determination on the merits would be effective in eliciting a response. See Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003). As a result, denying this motion would be unfairly prejudicial to the SEC. See id. Third, RM Enterprises and Speranza have failed to present any defense. As shown below, the facts set

5

forth in the SEC's complaint establish the elements of liability required for all claims against RM Enterprises and Speranza.

    1.    RM Enterprises

Sections 5(a) and (c) of the Securities Act prohibit the direct or indirect use of the mails or other means of interstate commerce to offer or to sell a security unless it is registered with the SEC or is exempt from registration. 15 U.S.C. § 77e(a) & (c); SEC v. Softpoint, Inc., 958 F. Supp. 846, 859 (S.D.N.Y. 1997). "Liability arises when a principal in the sale of an unregistered security is either an issuer, an underwriter, or a necessary participant." Softpoint, 958 F. Supp. at 859. Moreover, "to prove a violation of Section 5, a plaintiff need not establish scienter." Sec. and SEC v. Cavanagh, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998). The SEC has demonstrated that RM Enterprises violated Section 5 by directly issuing unregistered stock and using mail or courier, as well as facsimile, to send the relevant stock certificates. Compl. ¶¶ 71–76; see also Opinion and Order of Judge Irizarry ("Op. and Order") 15, ECF No. 112.

Section 17(a) of the Securities Act is "a general prohibition against fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce." SEC v. Power, 525 F. Supp. 2d 415, 419 (S.D.N.Y. 2007); 15 U.S.C. § 77q(a). Similarly, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 16 C.F.R. § 240.10b-5, prohibit fraudulent conduct in connection with the purchase or sale of a security. SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996). All three provisions require the SEC to show that the defendant: "(1) committed a deceptive or manipulative act, or made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device; (2) with scienter; (3) which affected the market for securities or was otherwise in connection with their offer, sale or purchase." Power, 525 F. Supp. 2d at 419 (describing the elements of claims

6

alleging violations of Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5). Scienter, a necessary element of liability under Securities Act Section 17(a)(1), Exchange Act Section 10(b), and Rule 10b-5, need not be established under Sections 17(a)(2) or (a)(3) of the Securities Act. Aaron v. SEC, 446 U.S. 680, 701–02 (1980). Based on these elements, I hereby find that the complaint sufficiently establishes that RM Enterprises violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.[7]

   2.   Speranza

In order to properly claim violations of Section 10(b) and Rule 10b-5, "a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." Chill v. General Electric Co., 101 F.3d 263, 266 (2d Cir. 1996) (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)).

The SEC has pled that Speranza materially misrepresented the existence of Spongetech's fictitious customers by creating websites, setting up virtual offices, renting temporary office space for the customers, and inventing business persons. Compl. ¶¶ 53–66; Op. & Order at 23.

---

[7] While the SEC makes a showing that RM Enterprises violated Section 5 of the Securities Act, the Complaint does not set forth an argument as to how RM Enterprises' violated Sections 17(a) or 10(b), but instead focuses on how defendants Metter, Moskowitz, and Spongetech made false statements. See Op. & Order at 21; Compl. ¶¶ 26–52. However, there is sufficient evidence in the Complaint to show that RM Enterprises is also liable for violations of these provisions via the actions of Metter, Moskowitz, and Spongetech. See Op. & Order at 21. Where an agent of a corporation commits a culpable act with the requisite scienter, the act and accompanying mental state are attributable to the corporation. Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 195 (2d Cir. 2008); SEC v. Ballesteros Franco, 253 F. Supp. 2d 720, 729 (S.D.N.Y. 2003). The SEC has shown that Moskowitz, an officer and director of RM Enterprises who controlled the company for the relevant period, violated Section 17(a) and Section 10(b) with the requisite scienter. Moreover, as the majority shareholder of Spongetech, RM Enterprises benefitted from statements made to inflate the value of Spongetech stock. Moskowitz also used RM Enterprises to distribute the shares and generate profits, allowing RM Enterprises to share in the illegally gained profits. See Op. & Order at 22. As a result, the Complaint sufficiently establishes the claims of fraud against RM Enterprises as Moskowitz's knowledge and acts are attributable to it.

Speranza's fraudulent conduct was also done knowingly, as he admitted in his testimony before the SEC that he created the fictitious customers. Op. & Order at 24.

The SEC also alleges that Speranza aided and abetted violations of Section 10(b) and Rule 10b-5. Section 20 of the Exchange Act states that :

> For purposes of any action brought by the Commission under paragraph (1) or (3) of section 78u(d) of this title, any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

15 U.S.C. § 78t(e). "To state a claim that defendants aided and abetted violations of the Exchange Act, the SEC must allege: (1) a primary violation of the Exchange Act, (2) actual knowledge of the violation by the aider and abettor, and (3) that the aider and abettor substantially assisted the primary violation." SEC v. Espuelas, 579 F. Supp. 2d 461, 483–84 (S.D.N.Y. 2008).

The evidence set forth in the Complaint sufficiently establishes that Speranza aided and abetted violations of Section 10(b) and Rule 10b-5. First, the SEC established RM Enterprises' liability for a primary violation of Section 10(b) and Rule 10b-5. See supra II.A.1. Second, in his testimony before the SEC Speranza admitted that he knowingly created fictitious customers associated with Spongetech. See Op. & Order at 23–24. Finally, the SEC has demonstrated that Speranza's misrepresentations and creation of seemingly legitimate customers concealed fraud and aided in Spongetech's appearance of legitimacy. Compl. ¶¶ 55–66. Thus, I find that the SEC has adequately shown that Speranza provided substantial assistance to Spongetech, Metter, and Moskowitz in their violations of Section 10(b) and Rule 10b-5. Id. ¶¶ 53–66.

**B. Remedies**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the Court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation omitted).

As to both defaulting defendants, the SEC requests that this Court issue a permanent injunction prohibiting future violations of the federal securities laws, and order disgorgement, prejudgment interest, and third-tier civil penalties. Additionally, the SEC seeks a penny stock bar against Speranza. In support of its request, the SEC submitted various documents, including bank records, transfer agent journals, purported attorney opinion letters, and SEC filings. See generally Davis Decl. Exs. 6–16. The SEC requests disgorgement of $52,356,995.40 from RM Enterprises and $15,000 from Speranza. Pl.'s Mem. in Supp. of Mot. for Entry of Default J. ("Pl.'s Mem. of Law") 11. The SEC's prejudgment interest calculation amounted to $2,534,525.71 from RM Enterprises and $883.40 from Speranza. See id. In support of its disgorgement and prejudgment interest calculations, the SEC submitted a chart representing the proceeds received by RM Enterprises in connection with the sale of Spongetech securities in unregistered transactions, copies of checks Speranza received from RM Enterprises, and a printout of the prejudgment interest computations according to the rates used by the Internal Revenue Service. See Davis Decl. Exs. 6, 11, 12, 14. While I recommend granting the permanent injunction against both parties, the penny stock bar against Speranza, and damages

9

against Speranza, I decline to proceed with a damages inquest as to RM Enterprises at this point in time.

1. Permanent Injunction

Once a violation of federal securities law is established, a permanent injunction against future violations will be granted if, "in view of the defendant's past violations . . . there is a reasonable likelihood that the wrong will be repeated." SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972). In analyzing the need for injunctive relief, courts may consider the following factors: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances, if any, against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; and (6) the likelihood that the defendant's occupation will present an opportunity, or lack thereof, for future violations. SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980). When seeking a permanent injunction, the SEC "need not demonstrate irreparable harm or an inadequacy of other remedies." SEC v. Stratton Oakmont, Inc., 878 F. Supp. 250. 225 (D.D.C. 1996) (citation omitted).

Where, as here, defendants RM Enterprises and Speranza knowingly and willfully engaged in a scheme in which 2.5 billion shares were distributed in unregistered transactions, millions of dollars were illegally obtained in repeated fraudulent transactions, and neither defendant provided assurances against future violations, I recommend that the SEC's permanent injunction request be granted, and that the Court permanently enjoin both defendants from directly or indirectly violating Exchange Act § 10(b) and Rule 10b-5.

2. Penny Stock Bar

Penny stocks are "low-priced, highly speculative stocks generally sold in the over-the-counter . . . market and generally not listed on an exchange." SEC v. Becker, No. 09-CV-5707, 2010 WL 2710613, at *1 (S.D.N.Y. Jul. 8, 2010) (quoting Koch v. SEC, 177 F.3d 784, 785 n.1 (9th Cir. 1999)). An equity security is considered a penny stock as long as it: "(1) is not registered and did not trade on a national securities exchange; (2) is not an 'NMS stock,' as defined in 17 C.F.R. § 242.600(b)(47); (3) has a value less than five dollars per share; and (4) [the issuing corporation] has tangible net assets of less than two million dollars or six million dollars for the last three years." Id.

Pursuant to Section 21(d)(6) of the Exchange Act, district courts may impose a penny stock bar, which precludes the subject from "participating in an offering of penny stock," and engaging in activities with "[an] issuer for purposes of issuing, trading, or inducing, or attempting to induce the purchase or sale of, any penny stock." 15 U.S.C. § 78(u)(d)(6). In deciding whether to impose a penny stock bar, courts in the Second Circuit consider factors such as: (1) the "egregiousness" of the underlying securities law violation; (2) the defendant's "repeat offender" status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will recur. SEC v. Patel, 61 F.3d 137, 141 (2d Cir. 1995); see also Becker, 2010 WL 2710613, at *1.

Plaintiff has demonstrated that Spongetech's securities were penny stocks based on the fact that: (1) Spongetech never reported revenues exceeding six million dollars across a four year period; (2) Spongetech stock never traded at $5 per share or higher during the relevant time period; and (3) Spongetech's securities were never registered or approved for registration on a

national exchange list, or approved for listing as an "NMS" stock. See Davis Decl. ¶¶ 18–20, Exs. 15–16. Given that Speranza knowingly benefited economically from and contributed to the fraudulent sale of Spongetech's securities by repeatedly aiding and abetting the misleading of Spongetech shareholders, I recommend imposing a penny stock bar against Speranza.

      3.      Damage Inquest as to Speranza

Plaintiff requests $15,000 in disgorgement of illegal gains, $883.40 in prejudgment interest, and $130,000 in civil penalties from Speranza. Pl.'s Mem. of Law 9–12. Disgorgement is an appropriate equitable remedy that ensures a defendant does not profit from his wrongdoing, and deters others from future violations of securities law. SEC v. Fishbach Corp., 133 F.3d 170, 175 (2d Cir. 1997). The SEC is entitled to disgorgement upon demonstrating "a reasonable approximation of profits causally connected to the violation." SEC v. First Jersey Sec. Corp., 101 F.3d 1450, 1475 (2d Cir. 1996). In determining whether to award prejudgment interest on the disgorgement amount, courts consider several factors, including the remedial purpose of the statute involved. SEC v. Credit Bancorp., No. 99-CV-11395, 2011 WL 666158, at *3 (S.D.N.Y. Feb. 14, 2011) (internal citations omitted). In an SEC action, "the IRS underpayment rate is an appropriate rate for prejudgment interest." Id.

The SEC submitted true and correct copies of the checks that Speranza received. Davis Decl. ¶ 15, Ex. 12. Speranza was sent one check for $10,000, and another for $5,000, and he received them near the time he constructed the phony websites and bogus virtual offices for Spongetech's fictitious customers. Davis Decl. ¶¶ 15–16, Ex. 12. The SEC also submitted its prejudgment interest calculations according to rates used by the IRS. Davis Decl. ¶ 17, Ex. 14. Upon review of the SEC's computations, I find that it is entitled to receive disgorgement of $15,000, and $883.40 in prejudgment interest.

Courts may also impose a civil penalty not to exceed the greater of (1) the gross pecuniary gain to the defendant as a result of a violation, or (2) a specified amount per violation where the amount depends on whether the violation is "first-tier," "second-tier," or "third-tier." See 15 U.S.C. § 78u(d)(3)(B). The maximum penalty under the first, second, and third tiers is $6,500, $60,000, and $120,000, respectively, per violation. SEC v. Neurotech Development Corp., No. 04-CV-4667, 2011 WL 1113705, at *4 (E.D.N.Y. Feb. 28, 2011). Third-tier penalties are appropriate if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" that "resulted in substantial losses or created a significant risk of substantial losses." 15 U.S.C. § 78u(d)(3)(B)(iii).

In determining whether to impose a civil penalty, and for what amount, the court should examine:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

SEC v. Aragon Capital Mgmt. LLC, 672 F. Supp. 2d 421, 447 (S.D.N.Y. 2009).

Here, the SEC requests that Speranza pay a statutory third-tier civil penalty of $130,000 based on the nature of his violations, which included establishing five websites, six virtual offices, and creating fictitious persons to deceive the public. Pl.'s Mem. of Law 12. Considering that Speranza's knowingly deceitful conduct was both recurrent and aided in causing substantial losses by public shareholders, but also that the statutory maximum third-tier penalty is $120,000, I find that $120,000 in civil penalties is appropriate. Accordingly, I recommend that Speranza pay plaintiff $135,883.40, totaling $15,000 in disgorgement, $883.40 in prejudgment interest, and $120,000 in civil penalties.

4. <u>Deferred Damages Inquest as to RM Enterprises</u>

Although plaintiff requests disgorgement of RM Enterprises' illegal gains, the calculation of those gains is complicated by several issues involving the multiple defendants in this case. Courts consistently hold that "[w]here some, but not all, defendants have defaulted . . . it is appropriate to 'enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments.'" <u>Gesauldi v. MMK Trucking, Inc.</u>, No. 09-CV-1484, 2010 WL 3619569, at *4 (E.D.N.Y. Aug. 24, 2010) (quoting <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 978 (S.D.N.Y. 1992)). Courts are particularly reluctant to perform a damages inquest when defaulting and non-defaulting defendants may be held jointly and severally liable. In such situations, "the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved." <u>Long Island Hous. Servs. v. Greenview Props., Inc.</u>, No. 07-CV-0352, 2008 WL 150222, at *1 (E.D.N.Y. Jan. 11, 2008).

Due to the allegedly collusive conduct of the remaining defendants, Moskowitz, Metter, and Spongetech could potentially be held jointly and severally liable for RM Enterprises' disgorgement amount. <u>See</u> <u>SEC v. Tecumseh Holdings Corp.</u>, No. 03-CV-5490, 2011 WL 2076466, at *2 (S.D.N.Y. May 24, 2011) (finding defendants jointly and severally liable for disgorgement because they were knowing participants who acted closely and collectively). Additionally, deferring a damages award at this time would minimize the risk of issuing inconsistent judgments. <u>See</u> <u>Harvey v. Home Savers Consulting Corp.</u>, No. 07-CV-2645, 2008 WL 724152, at *2 (E.D.N.Y. Mar. 17, 2008).

Additional criminal and civil actions, including a bankruptcy suit, further counsel against conducting a damages inquest as to RM Enterprises at this time. Two class actions, which were filed in October 2009, against Spongetech, Metter, Moskowitz, RM Enterprises, Halperin, Pensely, and several other individuals are currently pending before this court. See Orlan v. Spongetech Delivery Systems, Inc., No. 10-CV-4093 (DLI); Le v. Spongetech Delivery Systems, Inc., No. 10-CV-4101 (DLI). Moskowitz, Metter, and Speranza are also defendants in a related criminal complaint filed in the Eastern District of New York. United States v. Metter, No. 10-CR-600 (DLI). Furthermore, non-defaulting defendant Spongetech petitioned for bankruptcy in July 2010. Given the possibility of joint and several liability, and the possibility for inconsistent judgments created by the related criminal and civil actions, I respectfully recommend deferring the damages inquest as to RM Enterprises until the liability of the remaining non-defaulting defendants is established.[8]

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend: (1) entering default judgments as to liability against defendants RM Enterprises and Speranza; (2) imposing a penny stock bar against Speranza; (3) granting the permanent injunction against both defendants; (4) awarding damages totaling $135,883.40 against Speranza; and (5) deferring the calculation of damages against RM Enterprises until resolution of the claims against the remaining non-defaulting defendants.

The SEC is directed to serve a copy of this report and recommendation on RM Enterprises and Speranza and to promptly file proof of service via ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the

---

[8] Whereas the SEC seeks disgorgement, prejudgment interest, and a statutory third-tier civil penalty from Speranza only as to the $15,000 he was personally paid in exchange for helping to initiate the alleged fraudulent scheme, Pl.'s Mem. of Law 11–12, the SEC seeks the same from RM Enterprises as to $52,356,995.40 alleged to have ultimately been netted by the fraudulent scheme, id. Therefore, unlike as with RM Enterprises, no other party stands to be held jointly and severally liable for Speranza's damages amount.

undersigned, within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6.

SO ORDERED.

Dated: September 22, 2011
      Brooklyn, New York

                                                /s/
                                      JOAN M. AZRACK
                                      UNITED STATES MAGISTRATE JUDGE