UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        -v.-<br><br>SPONGETECH DELIVERY SYSTEMS, INC.; RM ENTERPRISES INTERNATIONAL, INC.; STEVEN Y. MOSKOWITZ; MICHAEL E. METTER; GEORGE SPERANZA; JOEL PENSLEY; and JACK HALPERIN,<br><br>                    Defendants,<br>and<br><br>BLUE STAR MEDIA GROUP, INC., BUSINESSTALKRADIO.NET ACQUISITION CORP.,<br><br>                    Relief Defendants. | Civil Action No. 10-CV-2031 (DLI) (JMA)<br><br>NOTICE OF MOTION BY MICHAEL CRAVEN, RECEIVER, OF RELIEF DEFENDANT BUSINESSTALKRADIO.NET ACQUISITIONS CORP., ALLOWING HE AND HIS COUNSEL TO WITHDRAW AND  EXCUSING THEM FROM FURTHER PARTICIPATION IN THIS CASE |

PLEASE TAKE NOTICE, that Michael Craven, Court appointed Receiver (the "Receiver") of BusinessTalkRadio.Net Acquisitions Corp. and its affiliates/subsidiaries ("BTR), hereby moves this Court for an order allowing he and his counsel to withdraw and excusing them from further participation in this case ("the "Motion").  The grounds for the Motion are as follows:

**BACKGROUND**

1.      By an order entered on or about July 18, 2012 (the "Receiver Order"), the Receiver was appointed by the Delaware Court of Chancery to oversee the liquidation of BTR's assets.  The Receiver has now sold the last of BTR's tangible assets.

6852761

2. Pursuant to the joint stipulation of BTR and the SEC, with the consent of Solution Funding and the Trustee, entered by order of this Court on June 20, 2012 and modified by order of October 9, 2012, proceeds, net of reasonable closing costs, from the sale of BTR assets were to be delivered to and held in the Court Registry Investment System Account ("CRIS Account"). Collectively, the June 20, 2012 and October 9, 2012 orders are referred to as the "CRIS Order". The Receiver has now delivered the net proceeds of the various asset sales to the CRIS Account. *See* generally Receiver's Annual Report dated December 16, 2013 filed with the Court Chancery, attached hereto as Exhibit A. As of this writing, the CRIS Accounts holds a little over $1 million.

## THE RECEIVER'S ANTICIPATED REMAINING ACTIONS

3. The Receiver is not aware of any remaining BTR intangible assets of any material value, although he has not instructed counsel or forensic accountants to investigate possible causes of action. Nonetheless, given the limited funds available, the Receiver does not believe there is an appetite among the creditors to finance the Receiver to embark on such a fishing expedition. Therefore, the Receiver believes that the purpose for his appointment has been fulfilled, and that the best results will be achieved for the creditors if the Receiver is permitted to exit in the most efficient way possible.

4. Other than seeking to be discharged from his obligations by the Court of Chancery, the only substantial remaining obligations left for the Receiver are (1) to wind up BTR's business and, (2) to resolve this matter as to BTR, as relief defendant. The amended complaint in this case does not seek any relief from the Receiver (as opposed to BTR).

5.     The Receiver has had preliminary discussions with counsel for the plaintiff, the Securities Exchange Commission ("SEC"), and counsel for one creditor, Solution Funding LLC ("SF") regarding whether the Court should enter judgment against BTR and, if so, the terms of such judgment.  It became clear during such discussions that there was no readily apparent route to resolve this issue, there was a divergence of views on these questions, and that a continued litigation process was likely necessary to bring the matter to a conclusion.

### RELIEF REQUESTED

6.     By this Motion, the Receiver respectfully requests that in order to preserve the remaining assets for the creditors, that he and his counsel be permitted to withdraw and be excused from any further participation in this case, and that any other creditor be granted standing to defend BTR, or dispute that judgment be entered against BTR.

### ARGUMENT

7.     This litigation action is the last substantial and substantive item that the Receiver must address.  As soon as the Receiver is able to bring this matter to a conclusion, he will apply to the Delaware Court of Chancery to be discharged from any further obligations to action behalf of BTR.

8.     So long as the Receiver and his counsel are involved, the Receiver and his counsel must continue to be compensated.  Each new filing will require the Receiver's counsel to read the new filing.  And, indeed, if there is extended ligation, then the Receiver and his counsel may potentially incur substantial compensation and fees.  BTR is no longer an operating entity, and therefore, compensation for the Receiver and his counsel must come out of the CRIS fund,

thereby immediately reducing the amount to be left for creditors.[1] The question then becomes whether such expense could be justified and be a benefit to the creditors. Under the circumstances in this case, it would be highly preferable and beneficial to the creditors to allow the Receiver and his counsel to withdraw from this case.

9. At this point, BTR has no "dog in this fight." It has preserved and liquidated its assets for the benefit of its creditors as best as it could. However, BTR is hopelessly insolvent. There will be nothing left for BTR or its equity holders. The only question now is which creditors are entitled to be paid what remains. It is a fight among creditors. BTR itself has no stake. It makes no sense for the Receiver or his counsel to continue their involvement, which will only result in the amount to be distributed to creditors to be diminished.

10. The CRIS Order was created after the SEC amended its complaint in order to name BTR as a relief defendant and SF filed as an intervenor in opposition to the SEC's filing. The rationale for the CRIS Order is that if SF's claim, or any other claim, is senior to the SEC's request for disgorgement against BTR, then litigating the merits of the SEC's disgorgement claim would be wasteful. There are presently pending before this Court motions by SF, other creditors and the SEC which will determine if SF's claim or any other claim is senior to the SEC. If other claims are senior to the SEC's claim and equal to or in excess of the CRIS Account

---

[1] At present, there is some residual revenue coming in to BTR which is presently funding BTR's wind-up activities. The Receiver's present plan is to use this residual revenue to fund BTR's remaining wind up activities and deposit any remaining amounts with this Court's CRIS fund. Of course, if the Receiver and his counsel must stay involved, then the residual revenue will soon run out, and the Receiver will need to apply for disbursements to the CRIS account, thereby reducing amounts to be distributed to other creditors.

6852761

proceeds, then there is no need whatsoever to decide the SEC's claim against BTR. In this case, there would be nothing for the Receiver to do.

11. If, however the Court determined that the SEC's disgorgement award would be senior or pari passu with SF's claim or any other creditor's claim, then litigating the merits of the SEC's disgorgement claim would become a necessary action. Thus, it would be unfair and contrary to the Receiver's duty to BTR's creditors generally to just concede the SEC's claim at present.

12. Therefore, if it became necessary to contest the SEC's disgorgement claim, would there be others who were sufficiently motivated to do so? The Receiver believes there would be. SF was promised the right to contest the SEC's claim if the claims procedure resulted in that action being warranted. SF, as well as other creditors that have filed motions to be paid out of the CRIS Account; SF and other creditors have the resources and the motivation to act on behalf of BTR if it is necessary in order to protect their claims. Those creditors should be required to do so (and not BTR) since it is the creditors' interests that would be protected. BTR itself has no interests to protect at this point.

13. The Receiver is neutral as to the outcome of the SEC's (and others') claims and, thus, cannot justify diminishing BTR's estate in pursuit of one outcome or another. Diminishing the estate of BTR to fund its continued existence would serve no purpose. Moreover, the Receiver has no knowledge of the factual matters underlying the SEC's claim to contribute. Thus, the Receiver does not bring any useful "institutional" knowledge to the table.

14. For all intents and purposes, the entirety of BTR's estate is held or will be held in CRIS Account under the CRIS Order where those with economic interest in competing claims can pursue their claims and interests.

WHEREFORE, the Receiver respectfully requests that he and his counsel be permitted to withdraw, and that any creditor whose claim may be harmed by entry of judgment against BTR, be granted standing to defend BTR.

| | |
|---|---|
| Dated: January 31, 2014 | **MORRIS JAMES LLP** |
| | /s/ *Brett D. Fallon* |
| | Brett D. Fallon (DE Bar No. 2480) |
| | 500 Delaware Avenue, Suite 1500 |
| | P. O. Box 2306 |
| | Wilmington, DE 19899-2306 |
| | Telephone: (302) 888-6888 |
| | Facsimile: (302) 571-1750 |
| | Email: bfallon@morrisjames.com |
| | |
| | *Attorneys for Michael Craven, not in his individual capacity but solely in his capacity as Receiver for BusinessTalkRadio.Net Acquisition Corp.* |