**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

SPONGETECH DELIVERY SYSTEMS, INC., RM ENTERPRISES INTERNATIONAL, INC., STEVEN Y. MOSKOWITZ, MICHAEL E. METTER, GEORGE SPERANZA, JOEL PENSLEY, and JACK HALPERIN,

Defendants,

and

BLUE START MEDIA GROUP, INC., BUSINESSTALKRADIO.NET ACQUISITION CORP.,

Relief Defendants.

--------------------------------------------------------- X

**MEMORANDUM AND ORDER**
10-CV-2031 (DLI) (JMA)

**DORA L. IRIZARRY, United States District Judge:**

The Securities and Exchange Commission ("SEC") initiated the instant enforcement action on May 5, 2010 against defendants Spongetech Delivery Systems, Inc. ("Spongetech"), RM Enterprises International, Inc. ("RM Enterprises"), Steven Y. Moskowitz, Michael E. Metter, George Speranza, Joel Pensley, and Jack Halperin, for violations of several securities laws and rules, including Sections 5 and 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5. Over $5 million of the proceeds from the fraud were used to benefit BusinessTalkRadio.net, Inc. ("BTR"), another company in which some of the Spongetech officers were involved. Various parties possess claims against BTR, including the SEC and

Solution Funding, LLC ("Solution Funding" or "SF"), a secured creditor of BTR. In light of a related litigation in Delaware state court involving BTR and Solution Funding, the Court established a claims process to resolve the competing claims against BTR. BTR, which is also named as a defendant in the instant action, has been liquidated, yielding approximately $1,046,000, which currently sits in the Eastern District's Court Registry Investment System ("CRIS"). The Court referred the resolution of these competing claims to then-United States Magistrate Judge Joan M. Azrack for a report and recommendation ("R & R"). (*See* July 10, 2013 Order; July 11, 2013 Order; July 8, 2014 Order.) The magistrate judge issued an R&R on December 24, 2014 recommending that the Court award Solution Funding all of the funds in the CRIS Account. (*See generally* R & R, Docket Entry No. 333.) The SEC and Metter objected to the R & R. (*See* SEC's Response and Objection to R & R ("SEC Obj."), Docket Entry No. 334; Objection of Michael Metter to the R & R ("Metter Obj."), Docket Entry No. 335.) For the reasons below, the Court adopts the R & R in its entirety.

## BACKGROUND

The Court incorporates the recitation of the facts as provided in the R & R, and will recite the facts of this case only to the extent necessary to explain the Court's ruling.

## DISCUSSION

### I. Legal Standard

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F. 3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear

error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

## II. Analysis

As a result of the claims process this Court established to resolve the competing claims against BTR, two primary questions arose: (1) whether the SEC is entitled to a disgorgement judgment against BTR; and (2) whether Solution Funding's secured claim against BTR should be subordinated or otherwise not enforced. The Court finds that the SEC is entitled to a disgorgement judgment against BTR, and Solution Funding's secured claim against BTR should be enforced without subordination.

### a. SEC is Entitled to a $5.69 Million Disgorgement Judgment against BTR

In the SEC's motion for disbursement, the SEC contended that it is entitled to a disgorgement judgment in the amount of $5.69 million based on the RM Loan. (*See* SEC Mot. for Disbursement, Docket Entry No. 261.) Solution Funding opposed the SEC's motion, and argued primarily that BTR did not receive any ill-gotten gains from the RM Loan because the "RM Loan transaction merely replaced one BTR $5 million obligation with a new, $5 million secured obligation." (SF Opp'n to SEC Mot., Docket Entry No. 272, at 4.) The SEC countered that, *inter alia*, Solution Funding failed to make any showing that BTR actually provided $5 million worth of valuable consideration in exchange for the $5 million from RM Enterprises. (SEC Reply in Further Support of Mot. for Disbursement ("SEC Reply"), Docket Entry No. 276, at 4-5.) The magistrate judge found Solution Funding's arguments in opposition to be meritless

and recommends that the Court hold that the SEC established its entitlement to a $5.69 million disgorgement against BTR. (R & R at 11-12.) There were no objections to this recommendation. Upon due consideration, the Court adopts this recommendation and finds that the SEC is entitled to a $5,190,000 disgorgement judgment against BTR, plus prejudgment interest to be calculated as of the date of the entry of the judgment.

**b. Solution Funding is Entitled to Retain Priority**

The central remaining issue is whether Solution Funding, as a secured creditor, has priority over the SEC's disgorgement judgment. In its motion for disbursement, Solution Funding made two arguments. "First, both the amount and the enforceability of BTR's obligation to Solution Funding have been definitively established by a judgment entered on November 30, 2012 by the Delaware Court in favor of Solution Funding and against BTR in the amount of $2.5 million." (SF Mot. for Disbursement ("SF Mot."), Docket Entry No. 280, at 1.) "Second, BTR's obligation to Solution Funding is secured by a perfected first priority security interest in all of the assets of BTR and its subsidiaries and in all of the funds currently in the BTR CRIS Account." (*Id.* at 2.) Based upon these propositions, Solution Funding argued that it has priority, up to the amount necessary to satisfy the Delaware Judgment, over all other claims asserted against either those assets or those funds. (*Id.* at 3.)

The SEC opposed this conclusion, and argued that "the Court should find in equity that the SEC's claims for disgorgement have priority over the claims submitted by Solution Funding." (SEC Opp'n to SF Mot. to Distribute ("SEC Opp'n"), Docket Entry No. 281, at 1.) In support of its argument, the SEC analogized the instant proceeding to cases involving SEC "distribution proceedings" and SEC receiverships. The SEC argued that in SEC "distribution proceedings" and receiverships, a court can limit secured claims in whatever manner the court

"determines to be fair and reasonable under the circumstances." (SEC Reply at 5.) According to the SEC, under this "fair and reasonable" standard, the Court should limit Solution Funding's secured claim and permit the SEC to take highest priority over the purported secured claims of Solutions Funding. (*Id.*) The SEC further supported its argument by noting that, if the Court were to do otherwise, Solution Funding, which acquired the BC Loan under, "at best, *unusual* circumstances," will receive an unfair "windfall" and the victims of the Spongetech fraud, will recover nothing. (SEC Opp'n at 5 (emphasis in original).)

Solution Funding countered the SEC's argument contending that the Second Circuit's decision in *F.T.C. v. Bronson Partners LLC*, 654 F.3d 359 (2d Cir. 2011) establishes that the SEC's disgorgement judgment is a general unsecured judgment and, therefore, is subordinate to Solution Funding's judgment. The magistrate judge agreed with Solution Funding and recommends that this Court find that Solution Funding's judgment has "priority over the SEC's disgorgement judgment, and [that] the broad equitable principles cited by the SEC do not provide a basis to limit Solution Funding's recovery." (R & R at 13.) For the reasons set forth below, the Court agrees and adopts the magistrate judge's recommendation on this issue.

**i. The Fair and Reasonable Standard is Inapplicable**

The SEC objects to the magistrate judge's recommendation that Solution Funding's judgment has priority over the SEC's disgorgement judgment. First, the SEC argues that the magistrate judge incorrectly relied on inapplicable dicta from the *Bronson* decision, while disregarding decisions that support the Court's equitable distribution of BTR assets in favor of the SEC. (*See* SEC Obj. at 3.) Specifically, the SEC contends that the *Bronson* decision does not serve as "a basis for defeating the SEC's equitable claims *entirely*, and eliminating all equitable remedies available to the Court pursuant to Section 21(d)(5) of the Exchange Act."

(*Id.* (emphasis in original).) Moreover, the SEC argues that "*Bronson* was a narrow decision that merely upheld the long-standing principle that enforcement agencies, like the FTC and SEC, need not trace funds subject to distribution in order to obtain a disgorgement order." (*Id.*) According to the SEC, the *Bronson* court provided no discussion of how to resolve competing claims between competing claimants, whether holding secured or unsecured claims, and did not purport to limit a district court's equitable powers in SEC disgorgement proceedings, as the magistrate judge held. (*Id.* at 3-4.)

The SEC is not presenting any new arguments in this objection. The SEC merely reiterates its previous argument that the Court is not required to rigidly adopt or adhere to state priority laws in SEC disgorgement proceedings because Section 21(d)(5) of the Exchange Act provides the Court with "broad equitable powers to do what is necessary and appropriate to benefit shareholders." (*Id.* at 3-4.) The SEC again attempts again to analogize the instant claims process to a court addressing competing claims in SEC disgorgement proceedings and employing its equitable powers under the Exchange Act to issue fair and reasonable distributions that are not bound by formal state law constraints. (*Id.* at 4.) The SEC continually invokes equitable considerations, including by noting the supposedly "convoluted and irregular transactions giving rise to Solution Funding's claim." (*Id.* at 6.) At its core, the SEC's primary argument in its objections remains the same, which is that "the court in equity may decide not to adhere to state law priority rules." (*Id.* at 6.)

As the SEC presented this same argument to the magistrate judge, the Court will review this objection for clear error. *See Robinson v. Superintendent, Green Haven Correctional Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)) ("However, when a party makes only conclusory or general

objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."). The Court finds no error, much less clear error, with the magistrate judge's finding regarding the scope of the Court's equitable powers in the instant action, because: (1) the Second Circuit's decision in *Bronson* indicates that the SEC's disgorgement judgment does not have priority over a secured claim; (2) the cited cases involving SEC distribution proceedings are not on point; and (3) principles of law and equity further suggest that the Court should not be quick to disregard state law priority rules.

First, in *F.T.C. v. Bronson Partners, LLC*, the defendant argued that, in order to receive a disgorgement judgment, the Federal Trade Commission ("FTC") was required to use the principles of tracing to trace specific funds to the defendants' unlawful conduct. 654 F.3d 359, 372 (2d Cir. 2011). The Second Circuit rejected this argument because, in order to obtain and enforce disgorgement judgments, the FTC and the SEC are not required to identify specific funds in the defendant's possession that were obtained through the unlawful conduct at issue. *Id.* at 373. The Second Circuit engaged in an extensive analysis of the disgorgement remedy in the context of enforcement actions and went on to explain the consequences of its holding and noted that "an agency that has won a disgorgement order [is not] entitled to priority over the other creditors of the defendant." *Id.* at 372-375. The *Bronson* court added that, if the defendant turned out to be insolvent, the disgorgement judgment obtained would only permit the agency to "share with other creditors on an equal basis." *Id.* at 374. This analysis led the magistrate judge "to conclude that such a disgorgement judgment has the same priority as other unsecured claims." (R & R at 14.) The Court agrees. The *Bronson* decision supports a holding that that the SEC's disgorgement judgment is a general unsecured judgment and, therefore, is subordinate to Solution Funding's secured judgment.

Second, the SEC's renewed attempt to compare SEC distribution proceedings to the instant claims process is unpersuasive. As the magistrate judge noted, "Courts look to the 'fair and reasonable' standard in reviewing the SEC's plans to distribute funds to investors that have been disgorged by a defendant and are, essentially, already in the SEC's possession." (R & R at 14 (citing *S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (analyzing distribution of disgorgement consent judgment); *Official Comm. of Unsecured Creditors of WorldCom* ("WorldCom"), *Inc.* v. S.E.C., 467 F.3d 73, 82–84 (2d Cir. 2006) (analyzing distribution of SEC's of "Fair Fund" recovery, which includes disgorgement and related civil penalties).) In its objection, the SEC argues that "these cases involve the equitable distribution of assets in contested SEC disgorgement proceedings, between claimants raising legal and equitable claims, and are thus more analogous to this proceeding than the cited dicta from *Bronson*." (SEC Obj. at 5.) The Court disagrees.

The instant claims process, which centers on the SEC's disgorgement claim vis-à-vis other creditors, is a different issue from whether the SEC's plan for distributing those funds is fair and reasonable, as would be the question in a typical SEC distribution proceeding. The proceedings the SEC highlights often are focused on weighing the competing equitable interests of victimized investors vis-à-vis each other, and, unlike here, generally do not focus on creditors, particularly secured creditors. The magistrate judge previously scrutinized whether these proceedings provided sufficient support for the Court's power to employ the broad equitable principles espoused by the SEC to limit Solution Funding's secured judgment and concluded that they did not. SEC's attempt to rehash these same arguments fails to demonstrate the clear error necessary to depart from the magistrate judge's thorough and correct analysis and resulting recommendation.

Third, the SEC provides an insufficient basis to stray from the principle that equity follows the law. As Solution Funding notes, "In essence, the SEC's argument is that Section 21(d)(5) of the Securities Exchange Act creates power in the federal courts to subordinate claims having lawful priority regardless of their validity and regardless of whether the persons holding such claims have engaged in 'egregiously inequitable conduct' such as might support equitable subordination, or, indeed, have engaged in *any* misconduct." (SF's Reply to SEC's Opp., Docket Entry No. 339, at 2.) It is certainly true that the choice of an appropriate remedy for violations of the federal securities statutes is a question of federal law, committed to the equitable discretion of this Court. *See, e.g.*, *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *SEC v. Certain Unknown Purchasers of Common Stock of and Call Options for Common Stock of Santa Fe Int'l Corp.*, 817 F.2d 1018, 1020 (2d Cir. 1987). Even with that discretion, "[t]he Court's equitable authority, however, does not extend to abrogating property rights created by state law and protected by due process; equity follows the law." *SEC v. Haligiannis*, 608 F. Supp. 2d 444, 449 (S.D.N.Y. 2009) (citing *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893)). In the instant case, the priority of Solution Funding's first position security interest over the SEC's unsecured interest in the CRIS Account funds is defined and established by law, and the SEC and Metter have not presented this Court with a basis for why equity has the power to change Solution Funding's rights. Relatedly, the Court denies Metter's request for a hearing on these issues, as such a hearing is unnecessary.

**c. The Claims Order Bars Subordination of Solution Funding's Judgment**

In addition to the SEC's primary argument regarding the "fair and reasonable" standard addressed above, Metter, the SEC, and the Lead Plaintiffs also argued that Solution Funding's claim should be subordinated or not enforced because Solution Funding was involved in

inequitable conduct that includes a breach of fiduciary duty by Michael Pisani Sr, who was a member of BTR's board. In opposition, Solution Funding asserted that the Court's June 20, 2012 Order ("Claim Order"), which established the instant claims process, precludes any equitable re-ordering of priorities and is limited solely to determining the facial priority of the various claims. (SF Mot. at 6-9.)

The Claims Order directs claimants to file claims setting out the basis of their assertion "of priority over other creditors." (June 20, 2012 Order, Docket Entry No. 234, at 2–3.) Further, the Claims Order states that "[c]reditors shall have *the same relative priority* with regard to all proceeds of sale deposited in the CRIS account as they possessed with respect to the assets made to facilitate their sale, or as they possessed with respect to such proceeds prior to their deposit in the CRIS account." (*Id.* at 3 (emphasis added).) Relatedly, the joint motion submitted by the SEC, Solution Funding, and other relevant parties when they asked the Court to approve the Claims Order, which the parties had proposed to the Court, states: "[t]he SEC . . . has advised counsel for Solution Funding that it is prepared to cooperate with Solution Funding and other interested parties to ensure that the proceeds of the sale of the assets of [BTR] will be disposed of fairly, appropriately *and in accordance with the current priority among creditors under the governing law*." (Joint Mot. to Establish Procedure for Disposition of Proceeds, Docket Entry No. 233, at 2 (emphasis added).)

The magistrate judge held that the resulting language in the Claims Order "indicates that the Court cannot alter the claimants' relative priority to the proceeds." (R & R at 19.) The SEC objects to this finding and argues that "the Claims Order does not limit the Court's ability to apply its equitable powers under Section 21(d)(5) of the Exchange Act, as set forth above, nor should it be interpreted in this fashion." (SEC. Obj. at 7.) Metter also objects and maintains that

the Claims Order and the preceding joint motion "only reflect that the creditors' priority is not disrupted by virtue of the claims process, but they do not provide that issues relating to the prior breach of fiduciary duties are somehow eradicated." (Metter Obj. at 19.) Metter adds, "Rather, those filings confirm that, if the prior claims are valid, they will still retain the priority that existed before deposit of proceeds into the CRIS account, leaving to be determined the issue of whether that claimed priority is valid and enforceable." (*Id.*)

Upon a *de novo* review of whether the Claims Order bars review of the underlying priorities of claims held by the various claimants, the Court finds that it does. The SEC and Metter effectively are asking the Court to disregard the very order governing distribution of funds that SEC and Metter (in his then capacity as chief executive officer of BTR and Blue Star Media Group, Inc.) jointly asked the Court to enter. In reliance on the Claims Order, Solution Funding agreed to forego any self-help, such as filing its motion to intervene, and, instead, acceded to the process for determining claims priority and distribution reflected in the Claims Order. The SEC and Metter may not circumvent the very claims process that the SEC sought to establish in return for Solution Funding's agreement to forego self-help.

Moreover, the plain language of the Claims Order and the parties' joint request for the Order denote that the Claims Order was not intended to allow reordering of priorities under equitable subordination. The Court agrees with Solution Funding that such an effort by the SEC to undercut the process it requested is barred by equitable estoppel. (SF Resp. to Metter Objections and SEC Objections, Docket Entry No. 337, at 6); *see also CBF Industria de Gusa S/A v. Steel Base Trade AG*, 2015 WL 1191269, at *4 (S.D.N.Y. Mar. 16, 2015) ("Equitable estoppel can be invoked to stop a party from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the

other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to its detriment." (citing *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir.2001))). Accordingly, the Court denies the requests of Metter and the SEC to alter the priority of Solution Judgment's judgment.

**d. Metter's Objection Regarding the Enforcement of Foreign Judgments is Meritless**

The bulk of the parties' arguments concern whether Solution Funding's claim should be subordinated. However, one party, Metter, challenged the validity of Solution Funding's judgment, which was entered upon the Receiver's consent in the Delaware Chancery Court. The magistrate judge rejected Metter's argument that Solution Funding's judgment is unenforceable because Solution Funding has not complied with New York law concerning the enforcement of foreign judgments. (R & R at 20 n.13.) Metter objects to this finding, arguing that "[t]he procedures employed by Solution Funding in connection with the disbursement proceedings were wholly inadequate for enforcement of a Delaware judgment in a New York court." (Metter Obj.) Metter contends that, under New York state law, the Receiver's consent judgment is not automatically enforceable and this Court can inquire into whether the consent judgment involved fraud or collusion. (*Id.*) Because the magistrate judge did not substantively respond to this argument, the Court will review the issue *de novo*.

Metter's argument is specious. His attempt to analogize the Receiver's consent judgment to default judgments and confessions of judgments is not persuasive. *See Mallan v. Samowich*, 94 A.D.2d 249, 253 (1st Dep't 1983) ("CPLR 5401 . . . only [bars enforcement of] default and confession judgments."). Metter also argues that when parties "are relying on a stipulated judgment, the courts will look at whether the judgment involved 'fraud, collusion, mistake, accident,' or some other defect." (Metter Obj. at 18 (citing *Canino v. Electric Tech*

*Corp.*, 49 A.D. 3d 1050, 1051 (3d Dep't 2008) and *Cadle Co. v. Tri-angle Assoc.*, 18 A.D.3d 100 (1st Dep't 2005))). Neither of the cases Metter cites in support of this proposition have any relevance to the instant proceeding. Moreover, although an exception to the full faith and credit clause exists where the state court judgment was obtained by collusion or fraud, Metter points to no evidence of such collusion or fraud. In fact, the detailed motion to approve the consent judgment that the Receiver filed in the Delaware court indicates the contrary. Metter's suggestion that the Receiver's actions constitute collusion is baseless. Accordingly, Metter's objection that Solution Funding's judgment is not entitled to full faith and credit or enforcement is meritless, and the magistrate judge's recommendation is adopted.

**e. Claims of the Remaining Unsecured Creditors**

The magistrate judge also recommended denial of the motion for disbursement by Hinshaw & Culbertson and Ashby & Geddes, who were counsel to BTR during Metter's tenure as President and performed legal services for BTR from January 2012 through October 2012. (R & R at 27-29.) The magistrate judge also recommends denial of Metter's request for payment for unused vacation time during 2011 and 2012. (*Id.* at 29-30.) Lastly, the magistrate judge recommends denial of disbursement claims from Cohn Birnbaum & Shea P.C. (another law firm), and state and federal taxing authorities. (*Id.* at 30-31.) There were no objections to any of these recommendations. Upon due consideration, these recommendations are adopted in full.

## CONCLUSION

For the foregoing reasons, the Court adopts the R & R in its entirety. Solution Funding's Motion for Disbursement is granted and, having found that Solution Funding has a priority secured interest, it is awarded all of the funds in the CRIS Account in satisfaction of its $2.5 million judgment against BTR, plus prejudgment interest to be calculated as of the date of the entry of the judgment. Further, the SEC is entitled to a $5,190,000 disgorgement judgment against BTR, plus prejudgment interest to be calculated as of the date of the entry of the judgment; however the SEC's disgorgement judgment is subordinate to Solution Funding's judgment. The Motions for Disbursement filed by the other claimants are denied.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2015

/s/
DORA L. IRIZARRY
United States District Judge