UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
U.S. SECURITIES AND EXCHANGE           :
COMMISSION,                             :     **MEMORANDUM AND ORDER**
                                        :     **ADOPTING REPORT AND**
                Plaintiff,              :     **RECOMMENDATION**
                                        :
         -against-                       :     10-CV-2031 (DLI)(RML)
                                        :
SPONGETECH DELIVERY SYSTEMS, INC.,     :
RM ENTERPRISES INTERNATIONAL, INC.,    :
STEVEN Y. MOSKOWITZ, MICHAEL E.         :
METTER, GEORGE SPERANZA, JOEL          :
PENSLEY, and JACK HALPERIN,            :
                                        :
                Defendants.             :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

On May 5, 2010, the U.S. Securities and Exchange Commission ("SEC") brought this action against Spongetech Delivery Systems, Inc. ("Spongetech"), including Michael Metter ("Metter"), and certain other Spongetech officers and employees (collectively, "Defendants"), for engaging in a scheme to increase demand for publicly traded stock in Spongetech by, *inter alia*, using false public statements and selling the artificially inflated shares through affiliated entities in unregistered securities transactions. (*See generally* Compl. and Am. Compl.) These affiliated entities include RM Enterprises International, Inc. ("RM Enterprises"), the majority shareholder of Spongetech. Metter was the President of RM Enterprises and a member of its Board of Directors. (Am. Compl. ¶ 21, Dkt. Entry No. 219.) Metter also is Spongetech's President and Chief Executive Officer ("CEO"). (*Id.*)

On July 9, 2010, Spongetech petitioned for bankruptcy in the Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court"). The Bankruptcy Court approved the appointment of a trustee over Spongetech on July 20, 2010. On July 29, 2011, the Bankruptcy

Court entered an order: (1) approving the entry of judgment in this SEC action against Spongetech and (2) denying the trustee's settlement offer by which the estate would consent to the entry of an SEC administrative order revoking registration of Spongetech's securities. (Mem. of Decision and Order on Motions to Approve SEC Settlements, Bankruptcy Court, July 29, 2011, Dkt. Entry No. 336.) On April 17, 2014, the Bankruptcy Court issued an Order of Final Decree effectively closing the matter. (Order of Final Decree, April 17, 2014, Dkt. Entry No. 476.)

On March 3, 2011, this Court endorsed a consent judgment as to relief defendant Blue Star Media Group, Inc. (Mar. 3, 2011 Consent Judgment, Dkt. Entry No. 269.) On March 14, 2011, a preliminary injunction was issued against six defendants in this action, including Metter. (*See* Mar. 14, 2011 Order, Dkt. Entry No. 112.) Thereafter, this Court entered the following judgments: (1) on November 2, 2011, judgment was entered against Spongetech; (2) on March 6, 2011, default judgments were entered against defendants RM Enterprises and George Speranza; (3) on June 12, 2012, judgment was entered against Steven Y. Moskowitz ("Moskowitz"), the Chief Financial Officer ("CFO") of Spongetech; and (4) on December 14, 2012, a consent judgment was entered against Metter that barred him from serving as an officer or director of a public company and from engaging in any offering of penny stocks. This last judgment also provided that Metter disgorge certain proceeds, and pay prejudgment interest and civil penalties. Under the consent judgment, Metter admitted to all of the SEC's allegations.

On November 25, 2014, the SEC filed a fully briefed motion (Dkt. Entry No. 331) requesting that the Court find Metter jointly and severally liable to disgorge $52,356,995.00 in illicitly acquired proceeds, pay prejudgment interest from the date of the commencement of this action until the date of entry of judgment as well as a civil penalty of $6,133,540.00. (*See*

2

*generally*, SEC Mem. of Law in Support of Motion for Final Judgment ("SEC Mem."), Dkt. Entry No. 331-1.) Metter opposed the imposition of joint and several liability, disputed the SEC's calculations with respect to the disgorgement figure, and contended that financial hardship hinders his ability to pay any judgment. (Metter Mem. of Law in Opposition to SEC Motion for Final Judgment ("Metter Opp."), Dkt. Entry No. 331-14.)

On January 12, 2015, this Court referred the SEC's motion for monetary relief as to Metter to the then assigned magistrate judge for a report and recommendation ("R & R").[1] The matter was reassigned to the Honorable Robert M. Levy, U.S.M.J., on January 13, 2015.

On August 3, 2015, the magistrate judge issued an R & R recommending that the SEC's motion be granted and that Metter be held jointly and severally liable for the following damages: (1) disgorgement in the amount of $52,236,995.00; (2) prejudgment interest in an amount to be determined based on the Internal Revenue Service ("IRS") rate from May 5, 2010 to the date of entry of judgment; and (3) a civil penalty of $6,133,540.00. (R & R at 13, Dkt. Entry No. 347.) On August 17, 2015, Metter filed an objection to the R & R. (Metter Obj., Dkt. Entry No. 348.) On August 27, 2015, the SEC filed a reply in opposition to Metter's objection to the R & R. (SEC Reply, Dkt. Entry No. 350.) Upon due consideration, *de novo* review, and for the reasons set forth below, the R & R is adopted in its entirety.

**I.     Standard of Review**

Where a party objects to an R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Portions of the R & R to which the parties have not objected are reviewed for clear error. *See Orellana v. World Courier, Inc.*, 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010). The district court may then "accept, reject,

---
[1] Then U.S. Magistrate Judge Joan M. Azrack subsequently was elevated to district judge of this Court.

or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

**II.     Discussion**

   **A. Disgorgement**

      **1) The $52 Million Disgorgement Amount is Appropriate**

The fundamental purpose of disgorgement is to remedy securities law violations by depriving malefactors of the fruits of their illegal conduct. *SEC v. Fishbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997). District courts are accorded broad discretion in calculating disgorgement amounts associated with securities law violations. *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014). The only restriction imposed upon courts in awarding disgorgement is that the amount must constitute a reasonable approximation of the profits causally related to the illicit activity. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996). In that respect, the SEC bears the ultimate burden of persuasion that its proposed disgorgement figure reasonably approximates the amount of unjust enrichment. *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996). Once the SEC meets this burden of persuasion, the burden shifts to the wrongdoer to demonstrate that the disgorgement amount requested is not a reasonable approximation of the unlawfully obtained profits. *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 245 (2d Cir. 2014) (applying a "two-step burden-shifting framework" to a Federal Trade Commission action identical to that applied in SEC disgorgement actions).

In the instant matter, the SEC seeks disgorgement in the amount of $52,356,995.00 based upon evidence that, between 2007 and early 2010, proceeds from the illegal sale of Spongetech shares totaling that amount were deposited into RM Enterprises' bank account, controlled by Metter. (Davis Decl. in Support of Mot. for Default Jdgmt. ("Davis Decl.") at ¶ 9, Dkt. Entry

No. 142.) The SEC's comprehensive calculation of monetary proceeds from the execution of the securities fraud constitutes a reasonable approximation of the profits therefrom. (*See* Davis Decl.) The burden now shifts to Metter to show that the aforementioned disgorgement amount is unreasonable.

Metter argues that, since only a total of $812,000.00 redounded to his direct benefit through two affiliated entities, the proposed disgorgement amount is unconstitutionally excessive. (Metter Obj. at 2, 12.) Beyond this empirically unsupported assertion and other conclusory statements, Metter offers no evidence that extricates him from the over $52 million in profits generated by the securities fraud he helped design and execute. (*See* Am. Compl. at ¶¶ 31-110.) Moreover, it is not necessary for Metter to have received directly the $52 million in illegal proceeds in order to be held liable therefor. *Contorinis*, 743 F.3d at 307. Indeed, "[u]njust enrichment may also be prevented by requiring the violator to disgorge unjust enrichment he has procured for a third party." *Id*. Here, Metter directed the distribution of the illegal proceeds to various entities in order satisfy loan obligations or other liabilities in furtherance of the securities fraud. (*See* Am. Compl. at ¶¶ 116-122.) Pursuant to Second Circuit precedent, it is not necessary that a defendant be the direct recipient of the ill-gotten gains in order to be held liable for the entire fraud amount provided there is evidence of the defendant's participation in the generation of those gains. *Contorinis*, 743 F.3d at 310; *see also SEC v. Warde*, 151 F.3d 42, 49 (2d Cir. 1998). Thus, Metter fails to demonstrate that the SEC's proposed disgorgement amount is not a reasonable approximation of the illegal profits generated by the securities fraud. Therefore, the SEC's requested disgorgement amount of $52,236,995.00 is a reasonable approximation of the illegal profits produced by the fraud, and the magistrate judge's recommendation that this disgorgement amount be imposed on Metter is adopted.

### 2) Metter Should Be Held Jointly and Severally Liable for Disgorgement

Courts in the Second Circuit consistently have held that, in circumstances where two or more individuals or entities collaborate in violation of federal securities laws, a court has discretion to hold them jointly and severally liable for the illicitly acquired proceeds. *SEC v. Pentagon Capital Management. PLC*, 725 F.3d 279 (2d Cir. 2013) (holding that an investment advisor, principal and manager could be held liable for the disgorgement award on a joint and several basis); *SEC v. AbsoluteFuture.com*, 393 F.3d 94 (2d Cir. 2004) (in reviewing disgorgement award, holding that joint and several liability for combined profits on collaborating parties was appropriate); SEC *v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) (affirming the district court's decision to impose joint and several liability of a disgorgement award); *SEC v. Suman*, 684 F. Supp. 2d 378 (S.D.N.Y. 2010) (holding that the imposition of joint and several liability was appropriate where the spousal relationship of the defendants buttressed an acting in concert theory). In the instant matter, Metter, in his capacity as CEO of Spongetech, collaborated with various corporate officers and defendants, including Moskowitz, to generate profits for the pump and dump scheme by, *inter alia*, issuing materially false and misleading statements in multiple press releases and SEC public filings designed to artificially inflate the value of Spongetech shares. (Am. Compl. at ¶¶ 31-110.)

Metter's argument challenging the validity and scope of the holding in *Pentagon Capital Management* also is without merit. (*See* Metter Obj. at 6-9.) *Pentagon Capital Management*'s holding that "there is no statutory requirement that a disgorgement award be measured as to each individual defendant" is applicable to the instant case because of the difficulty in apportioning liability among all of the actors. 725 F.3d at 288. As the amended complaint reflects, Metter, Moskowitz and various other individuals affiliated with Spongetech orchestrated a scheme to

fraudulently induce the purchase of Spongetech shares by the public in order to obtain illegal profits that were distributed in concealed transactions. (Am. Compl. at ¶¶ 31-110.) Because such a scenario presents substantial difficulty in accurately apportioning the illegal conduct and liability among the collaborators, the district courts are afforded discretion "to impose joint and several liability up to the amount of their combined income from illegal conduct." *SEC v. Boock*, 2014 WL 7641158, *7 (S.D.N.Y. October 27, 2014); *see also AbsoluteFuture.com*, 393 F.3d at 97.

Due to the instrumental role that Metter played in the securities fraud, his collaboration with other corporate principals, and his admission of the allegations in the amended complaint, the magistrate judge's recommendation is adopted and Metter is found to be jointly and severally liable for the disgorgement amount.

### B. The Civil Penalty Imposed Is Commensurate With The Pecuniary Gain

Civil penalties may be imposed for the subject violations pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Securities Exchange Act. *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). Under these statutes, civil penalties are arranged in a three-tier hierarchy dependent upon the severity of the violations. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B). In the instant matter, the SEC seeks third tier penalties against Metter, which require a showing that the violation "(1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and [(2)] . . . directly or indirectly resulted in substantial losses . . . to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). Maximum third tier penalties for a natural person liable for violations such as Metter's are the greater of $130,000.00 per violation or the gross amount of the pecuniary gain to that person resulting from the violations. *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). Given the undisputed allegations in the amended

complaint as reflected in Metter's consent judgment, the third tier penalty of $6,133,540.00 is warranted.

Metter's contention that the assessment of civil penalties against him exceeds his actual pecuniary gain is without merit. Specifically, Metter argues that the $5 million loan to Business Talk Radio ("BTR") did not constitute a pecuniary gain to Metter and, thus, should be excluded from any civil penalty amount. (Metter Obj. at 11.) However, the Court already has decided this issue in ruling that the funds paid to BTR and its creditors represent proceeds of the securities fraud and, thus, subject to disgorgement. (*See* Mar. 31, 2015 Opinion & Order adopting R & R at 3-4, Dkt. Entry No. 340.) Furthermore, because Metter personally guaranteed the entire amount of the $5.5 million loan, he was unjustly enriched by the $5 million that he directed RM Enterprises to pay to BTR's creditors to reduce his own liability. (*See* Koch Decl, Ex. C., Personal Guaranty at 158-59, Dkt. Entry No. 265-3.) Therefore, the imposition of a $6,133,540.00 civil penalty on Metter is proper and the magistrate judge's recommendation is adopted.

### C. Metter's Alleged Financial Hardship Does Not Preclude Disgorgement

Metter's allegedly impecunious financial condition does not serve as an impediment to awarding disgorgement. *SEC v. Wyly*, 56 F. Supp. 3d 394, 406 (S.D.N.Y. 2014). Notwithstanding his conclusory representations pertaining to alleged financial hardship, Metter has not proffered any evidence in support of such a claim. (Metter Obj. at 11.) Therefore, Metter's claim of inability to pay the disgorgement amount will not preclude the imposition of such an order.

### D. The Disgorgement Amount and Civil Penalties Are Constitutional And Not Excessive

Metter's assertion that the proposed disgorgement and civil penalty constitute excessive fines in violation of the Eighth Amendment of the U.S. Constitution is meritless. The Eighth Amendment's excessive fines clause limits the government's power to extract payments as punishment for some offense. *United States v. Bajakajian*, 524 U.S. 321 (1998). However, disgorgement is not a punitive measure, but rather an equitable remedy designed to compel a defendant to surrender the amount by which he was unjustly enriched. *Contorinis*, 743 F.3d at 301. Therefore, disgorgement falls outside the limits of the Eighth Amendment's proscriptions.

As the civil penalty proposed here represents the reasonable calculation of Metter's pecuniary gain during the course of the fraud as set forth above, Metter's Eighth Amendment violation claim fails here as well.

### III. Conclusion

For the reasons set forth above, the R & R is adopted in its entirety. The SEC's motion for damages is hereby granted and defendant Michael Metter is held jointly and severally liable for: (1) disgorgement in the amount of $52,236,995.00; (2) prejudgment interest based on the IRS rate from May 5, 2010 to the date of entry of this judgment; and (3) a civil penalty of $6,133,540.00.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2015

/s/
DORA L. IRIZARRY
United States District Judge

9